UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER M. MURPHY and
BARBARA M. CAMILLI,

                             Plaintiffs,

        v.

BRYAN MAGGS, MATTHEW BUZZETTI,
JOSEPH MARTINO, and JOHN DOES Numbers
One through Five,

                         Defendants.

_____

                    <u>DECISION & ORDER</u>

                    18-CV-6628FPG

       On August 31, 2018, *pro se* plaintiffs Christopher M. Murphy ("Murphy") and Barbara M. Camilli ("Camilli") (collectively, "plaintiffs") filed this action pursuant to 42 U.S.C. § 1983 against the County of Chemung, Chemung County Attorney Byran Maggs, and the City of Elmira and its employees Matthew Buzzetti and Joseph Martino.[1]  (Docket # 1).  The complaint alleges various constitutional claims arising from events that occurred on September 2, 2015.  (*Id.*).  Currently pending before this Court are two motions.[2]  Specifically, defendants Buzzetti and Martino have filed a motion for an order to compel with respect to both plaintiffs (Docket # 104), and plaintiffs have moved for sanctions and an order to compel with respect to Buzzetti, Martino, and Maggs (Docket # 105).  These motions are addressed below.

---

      [1]  The complaint also named five John Doe defendants who are identified as City of Elmira police officers. (Docket # 1).

      [2]  The parties have also filed summary judgment motions (Docket ## 132, 133, 143), which are pending before the district judge.  (*See* Docket # 13 at 1).

## I.      <u>Buzzetti and Martino's Motion for an Order to Compel</u>

Buzzetti and Martino (collectively, "Moving Defendants") seek an order compelling Murphy to produce documents requested during his deposition and Camilli to appear for a continued deposition and to pay a portion of the associated costs.[3]   (Docket # 104).

### A.      <u>Murphy</u>

On November 1, 2022, Murphy was telephonically deposed.  (Docket # 104-1 at 1-2, ¶¶ 5, 7).  During the deposition, counsel for Moving Defendants requested that Murphy produce all notes Murphy had made relating to the case and a preexisting written inventory of all personal property alleged to have been lost as a result of the underlying incident.[4]  Murphy responded that he would "like to give" the documents to counsel and was "happy" to comply with counsel's request.  (Docket # 104-2 at 21, 29, 50).  Counsel made the requests after Murphy indicated during his deposition that he took "a lot of notes," including "over the . . . 30 days [following plaintiffs' arrest] when [plaintiffs] were staying in a motel" (*id.* at 20, 50), and after Murphy confirmed that he had an "inventory of the personal property that [he] allege[s] [he] lost," which he could "dig . . . out" (*id.* at 28-29).[5]

On June 9, 2023, counsel for Moving Defendants wrote to plaintiffs reminding them that Murphy had not yet produced the documents requested during his deposition despite

---

[3]  With respect to Camilli, Moving Defendants alternatively request that she be precluded from testifying at trial as to the information requested.  (Docket # 104-1 at 4, ¶ 23).

[4]  During the deposition, counsel for Moving Defendants also requested that Murphy produce all records reflecting employment that he sought after the underlying incident.  (Docket # 104-2 at 35).  Because Moving Defendants did not refer to that request in their subsequent communications with Murphy (*see* Docket # 104-8 at 2) or in their moving papers, this order does not pertain to such documents.

[5]  Murphy served upon all counsel an errata sheet stating that he was "willing to comply with any reasonable requests to furnish counsel with any writings" provided that he received "a written request spelling out with reasonable specificity the particular subject matter at issue."  (Docket # 118-7 at 7).  Later, he reiterated in a subsequent letter to the Court that, during a conferral meeting, he "agreed to find the documents in question and send [counsel] copies if he would specifically identify them – without the need for a formal document request."  (Docket # 102 at 1).

"indicat[ing] that [he] would gladly turn [them] over."  (Docket # 104-6).  On June 15, 2023, Murphy wrote to the Court indicating that the parties conferred the day prior regarding various outstanding discovery disputes and that counsel for Moving Defendants "proposed to send [Murphy] a letter advising as to certain writings relating to the case discussed during [plaintiffs'] depositions on November 1, 2022."  (Docket # 102).  Murphy further represented that he "agreed to find the documents in question and send [counsel] copies if he would specifically identify them – without the need for a formal document request under Rule 34."  (*Id.*).

Counsel apparently failed to follow up in writing, and on July 12, 2023, Murphy again wrote to counsel, stating, "I'm willing to provide any notes or other papers I agreed to provide at my deposition.  Nonetheless, as I told you . . . , you first have to advise me the specific notes or papers you're looking for.  At this point, I don't remember what I might have said or agreed to when I was deposed months ago.  Nor is it incumbent upon me to go through the deposition transcript in search of this information."[6]  (Docket # 104-7).

Two days later, counsel for Moving Defendants sent an e-mail to Murphy noting that during the deposition he "simply requested the notes that [Murphy] indicated [he] [had] kept during the course of the events in the case and beyond, as well as [a] list of personal belongings [he] allege[s] to have lost in the events of the case."  (Docket # 104-8 at 2).  Counsel asked if Murphy was still willing to provide the documents and how much time Murphy needed to gather and produce them.  (*Id.*).  When he did not receive a response, counsel sent a follow-up e-mail on July 16, 2023.  (*Id.* at 1).  On July 17, 2023, Murphy sent a letter to counsel indicating that Murphy was no longer interested "in any further attempts to resolve the discovery dispute."  (Docket ## 104-9; 118 at 14).  Murphy now contends that this letter, when read in the context of

---

[6] Indeed, the index of Murphy's deposition transcript identifies the information and documents requested and the corresponding transcript page number reflecting the requests.  (Docket # 104-2 at 54).

the prior written communications, "makes clear beyond peradventure that [he] was referring solely" to a different ongoing discovery dispute.  (Docket # 118 at 14).

Moving Defendants filed the present motion on July 17, 2023.  (Docket # 104). Murphy opposes the present motion principally on the grounds that Moving Defendants neither formally served a demand for the requested documents nor met and conferred prior to filing the motion as required by Rule 37 of the Federal Rules of Civil Procedure.  (Docket # 118).

As to the first issue, courts in this Circuit are divided on whether "an order to compel may be issued to enforce an informal document request."  *Wells Fargo Bank, N.A. Trustee v. Konover*, 2010 WL 11561491, *4 (D. Conn. 2010) (citing cases).  *See*, *e.g.*, *Schneider on behalf of A.T. v. City of Buffalo*, 2021 WL 5042502, *4 (W.D.N.Y. 2021) ("[a]lthough informal exchange of discovery is certainly permissible, the appropriate mechanism for obtaining documents is set forth in Rule 34 of the Federal Rules of Civil Procedure[;] [w]here documents are not requested pursuant to this mechanism, but in a highly informal, extra-procedural manner such as a letter, the party evading the formality of a document demand may not rely upon Rule 37 . . . to obtain compliance") (internal quotation omitted); *Toth v. CSX Transp., Inc.*, 2007 WL 9777793, *1 (W.D.N.Y 2007) (indicating that a letter request that conforms with Rule 34(b) by specifying the time, place, and manner for disclosing documents may be sufficient); *Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, *6 (E.D.N.Y. 2014) ("[o]ral requests for documents made during depositions may be enforced in motions to compel").

Considering the specific facts of this case, I find that Moving Defendants have permissibly sought an order to compel.  Rule 1 of the Federal Rules of Civil Procedure states that all rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P.

1.  It would be unjust for a party to consistently indicate his or her willingness to produce documents pursuant to an informal request and without the need for a formal document request (*see* n.5 *supra*), then fail to produce the documents by the close of fact discovery, and thereafter oppose the requesting party's motion to compel.  *Cf. Trask v. Olin Corp.*, 298 F.R.D. 244, 260 (W.D. Pa. 2014) ("the inconsistent case law on the degree of formality required for a Rule 34 Request for Production to be enforced through a [m]otion to [c]ompel under Rule 37[] likely reflects one of the fundamental rules governing discovery: discovery is within the trial court's sound discretion[;] . . . courts conduct a fact-specific analysis into the course of discovery, the exchanges between counsel, and the judicial interests in both expediting litigation and promoting a fair trial[;] . . . [a]dditionally, the case law indicates that where parties are both aware of the documents being informally requested, courts are more likely to find that the request satisfies Rule 34").

The record also reflects that Moving Defendants sufficiently conferred with Murphy before filing the present motion.  The deposition occurred in November 2022.  In June 2023, counsel reminded Murphy of the request for documents; Murphy stated he would produce the requested documents on the condition that counsel identify the documents requested.  Counsel responded by stating that he "simply requested the notes that [Murphy] indicated [he] [had] kept during the course of the events in the case and beyond, as well as [a] list of personal belongings [he] allege[s] to have lost in the events of the case."  (Docket # 104-8 at 2).  Murphy apparently did not reply to that request.

Murphy complains that Moving Defendants specified – albeit insufficiently – the documents requested during the deposition only three days before filing the pending motion on the motion to compel deadline.  He contends that "[i]t's clear [counsel] did not want to wait

around for an answer . . . from me." (Docket # 118 at 8). It certainly would have been prudent for counsel to memorialize his request in writing, either upon completion of the deposition or promptly after Murphy indicated that his willingness to produce the documents was conditioned on counsel's written articulation of the requests. Nonetheless, the original demand was made in November 2022, well before the close of fact discovery and the deadline for filing motions to compel, and counsel sent a follow-up e-mail two days after Murphy failed to respond to the written clarification. Murphy then indicated his lack of interest in further conferring, which counsel reasonably interpreted as an indication of his disinterest in conferring about this issue. Even if, as Murphy contends, that letter pertained to his disinterest in conferring about *other* ongoing discovery disputes, he failed to even acknowledge counsel's attempts to identify the requests made during the deposition or request additional time to respond.

In sum, Murphy consistently indicated that he was willing to comply with Moving Defendants' requests; Murphy requested that counsel identify in writing the documents that were requested, and counsel ultimately did so. On this record, Moving Defendants' motion is granted. **Murphy is ordered to provide on or before March 20, 2024 all notes he took relating to the case and the inventory he made of belongings lost during the underlying events. (*See also* Docket # 104-2 at 50 (stating that counsel didn't "even have to ask" for all notes Murphy took related to this case as he was "happy to give them to" counsel)).**

B.   <u>Camilli</u>

Moving Defendants also ask the Court to compel Camilli to appear for a continued deposition on the grounds that she improperly refused to answer various questions. (Docket # 104-11 at 6-7). Alternatively, Moving Defendants request that this Court preclude Camilli from offering "favorable testimony" in support of future motions or at trial. (*Id.* at 7).

As an initial matter, Camilli argues that the Court should deny this portion of Moving Defendants' motion due to their failure to confer with her about any dispute regarding her deposition.  (Docket # 119-17 at 1-10).  Rule 37(a)(1) of the Federal Rules of Civil Procedure requires the moving party to include "a certification that the movant has in good faith conferred or attempted to confer with the person . . . failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  Although courts routinely deny motions to compel where the moving party has failed to confer, "[c]ourts have [also] excused the meet-and-confer requirement where . . . efforts at informal compromise would have been clearly futile."  *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4235768, *7 (S.D.N.Y. 2023) (internal quotations omitted).  The record strongly suggests that, even if Moving Defendants had conferred, their attempts to resolve this particular issue would have been unsuccessful as Camilli consistently stated throughout her deposition that she would not appear for a second deposition. *See, e.g.*, Docket # 104-3 at 64 ("I was prepared at 10:00 to start this deposition with you and try to get on the record and reflect that.  So, if we become disconnected, this isn't – I'm not doing another deposition with you.  This is the only deposition that you're going to get from me.  So, you need to move on to the next question, I mean, because I just can't guarantee how long this phone will last."); *id.* at 67 ("I'm going to put you on notice that I'm not going to do a second deposition with you because you're dragging this out with unnecessary questions and not getting to the questions that are relevant."); *id.* at 91 ("I'm not going to be responsible for another deposition, if this phone loses charge, Mr. Hourihan.  You're really going to have to move things along, if you have a lot more questions.  Let's get to the pertinent questions.").

Review of the deposition transcript and the submitted errata sheet justifies the request for a continued deposition of Camilli.  Although Moving Defendants exaggerate their

inability "to obtain *any* relevant and pertinent information" at the deposition (Docket # 104-11 at 7 (emphasis added)), Camilli did improperly respond to certain questions posed. *See Lowe for Taylor v. Cerner Health Servs., Inc.*, 2020 WL 6591649, *2 (E.D. Va. 2020) ("[t]o remedy impediment, delay, or frustration of a fair examination, a court may require the deponent to submit to a second deposition and order the deponent to give complete, nonevasive answers"). For example, the transcript reflects that Camilli failed to provide a responsive answer to questions about: (1) whether she went inside the real property tax office (Docket # 104-3 at 59 ("I'm going to need to come back to that to refresh my recollection on that.  Let's move on to the next question please."); *id.* at 98-102); (2) what the ramrod looked like (*id.* at 60-69 ("It's not relevant what it looked like.")); (3) which county officials she spoke with about getting additional time to remove items from the house (*id.* at 90-91 ("I don't want to go into details. . . . I'd like to move on.  For the record, we tried every avenue we possibly could think of in a state of crisis to get the county and city officials to give us additional time, and they would not.  They would not.  And I'm going to leave it that way with you.  Let's move on to the next question.")); and, (4) the estimated value of belongings left inside the house (*id.* at 97-98 ("I didn't sit down 30 days before you decided to break down my door and remove us from the premises to make a list 30 days before of everything that's in the house in order to plan for a situation like this. . . . I cannot put a dollar figure on that, at this time. . . . It's unlimited and enumerable [*sic*] and immeasurable, and only God would know the exact dollar figure, and I am not God.")). Additionally, Camilli changed and retracted various answers in a lengthy errata sheet, which Moving Defendants should have the opportunity to inquire about.  (*See* Docket # 119-8)  On this record, I grant Moving Defendants' motion to continue Camilli's deposition for the limited purpose of obtaining answers to the above-identified questions, asking reasonably related

follow-up questions, and inquiring about the answers Camilli changed or retracted in her errata sheet.[7]   The parties are directed to promptly confer to agree on a date, time, and place for the continued deposition, and, on or before **March 20, 2024**, Moving Defendants shall provide the Court in writing with the date and time of Camilli's deposition.   At this time, I deny without prejudice Moving Defendants' request for reimbursement of costs associated with Camilli's continued deposition.   Should Camilli fail to appear for her second deposition or unreasonably refuse to answer counsel's questions, Moving Defendants may renew their request for reimbursement of costs and fees.

In reaching this conclusion, I reject Camilli's remaining arguments in opposition to Moving Defendants' motion.   For example, an email from the court reporting company providing a videoconference meeting invitation that reflected that the deposition would start at 10:00 AM and end at 11:00 AM does not amount to a Rule 30(d)(1) stipulation between the parties to limit the deposition to one single hour.

Some guidance on appropriate deposition conduct is appropriate.   Although Camilli ultimately answered certain of counsel's questions, the path to those answers was often unnecessarily circuitous or contentious.   Many times, Camilli avoided answering questions altogether and instead interposed lengthy narratives, sometimes expressing her views on the relevance of the question or impugning the objectives or motives of counsel; other times, she refused to answer and requested or demanded that the question be deferred until the end of the deposition.   Neither manner of response is permitted.   If a question calls for and may be

---

[7]   To the extent that defendants' counsel believes that there are other questions that they put to Camilli that she improperly declined or refused to answer, which they wish to pursue in her continued deposition, they must identify those questions in a letter to this Court with copies to plaintiffs by no later than **March 13, 2024**.   The letter should only reference the question and transcript page number.   The Court will then re-review the transcript and determine which, if any, of those questions must be answered at the continued deposition.

answered with a "yes" or "no," the deponent must answer the question in that fashion; if Camilli believes that it cannot be answered that way, she must respond that it cannot be answered in such a fashion and concisely explain why not.  Camilli must answer the question that is being asked without volunteering information that has not been requested.  If she truthfully cannot recall, she should so state.  And, counsel for defendants must reasonably allow plaintiff to complete her answer to the question asked.

   To the extent that Camilli believes that a question is objectionable – for example, because it seeks irrelevant or inadmissible testimony – she should concisely note the objection in a nonargumentative manner – such as, "objection, relevance" – and answer the question.[8]  *See* Fed. R. Civ. P. 30(c)(2) ("[a]n objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection").  Defendants are not required to explain the relevancy of the question or explain how plaintiff's answer may be used in the case.  Additionally, Camilli is not entitled to decline to answer any question on the basis that she does not have counsel present.  If she does retain counsel, counsel must file a notice of appearance and appear with her at the continued deposition.  That Camilli, who is proceeding *pro se* in this litigation, does not have counsel does not entitle her to avoid, adjourn or cancel the continued deposition.  Murphy is strongly cautioned that although he may be present for the deposition, he is not permitted to answer on Camilli's behalf or otherwise speak to her while the deposition is ongoing.

---

[8] Very few exceptions exist to the general rule requiring a deponent to answer questions asked at a deposition, even if objections to the questions are noted.  However, a deponent may decline to answer a question that seeks privileged information (such as information protected by attorney-client privilege) as to which the deponent plans to seek a protective order.  Fed. R. Civ. P. 30(c)(2) ("[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)").

This Court expects the parties and counsel to adhere to the Federal Rules of Civil Procedure, the Court's guidance offered herein, and the applicable rules summarized above, as well as general rules of civility.  Failure of either side to abide by applicable rules and standards of civility may result in the imposition of sanctions, including case dispositive sanctions, financial sanctions, or other appropriate sanctions.  *See* Fed. R. Civ. P. 30(d)(2) ("[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent").

## II.    Plaintiffs' Motion for an Order to Compel

Plaintiffs have moved for an order compelling Buzzetti and Martino to provide supplemental responses to the document demands propounded upon each of them; plaintiffs also request that the Court order Maggs to provide supplemental answers to their first set of interrogatories and first and second set of document demands.  (Docket # 105).  The named defendants (collectively, "Responding Defendants") oppose plaintiffs' motion.  (Docket ## 115, 117).

As an initial matter, the Court exercises its discretion to strike plaintiffs' reply declaration (Docket # 126).  As part of their initial moving papers, plaintiffs filed a combined forty-eight page initial declaration and memorandum of law.  (Docket # 105-1).  This Court previously warned plaintiffs that filings violative of this Court's Local Rule 7(a)(3) could be stricken.  (*See* Docket # 85 at 8 n.3).  *See* Loc. R. Civ. P. 7(a)(3) ("[a]n affidavit, declaration, or affirmation must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports").  As to this motion in particular, the Court denied

plaintiffs' request to file a reply memorandum that exceeded ten pages.  (Docket # 125).  In an

apparent attempt to avoid that ruling, plaintiffs filed a forty-six page reply "declaration" that

contained extensive legal argument.  (Docket # 126).  The fact that plaintiffs omitted formal

caselaw citations from their declaration and included them in their memorandum does not

change the nature of their declaration.[9]  *See Muench Photography, Inc. v. Houghton Mifflin*

*Harcourt Publ'g Co.*, 2015 WL 4757601, *3 (S.D.N.Y. 2015) ("[i]t is well-established that a

court has the 'inherent authority' to manage the cases before it[;] . . . that 'inherent authority'

includes the court's ability to strike any filed paper which it determines to be . . . improper under

the circumstances") (internal quotation omitted).

   Turning to the merits of plaintiffs' motion, the Court first addresses two

objections that Responding Defendants have raised in response to various discovery demands –

namely, relevancy and issues of custody, possession, or control of the requested documents.  On

March 13, 2020, well before plaintiffs served the discovery requests at issue, the District Court

determined that plaintiffs' Fourteenth Amendment procedural and substantive claims relating to

the real property and Fourth Amendment claims relating to the eviction failed as a matter of law.

(Docket # 41 at 17-26, 28-30, 34).  Before dismissing those claims, Judge Geraci considered the

"threshold issue" of whether the federal district court possessed subject-matter jurisdiction to

hear such claims in the first instance.  Although he found it to be a "close question," Judge

Geraci determined that the *Rooker-Feldman* doctrine did not bar plaintiffs' claims because

plaintiffs' alleged injuries were "initiated and proximately caused by [the defendants], not the

---

  [9]  In contrast to this declaration – which served as plaintiffs' second opportunity to be heard on the motion
– the Court has considered plaintiffs' similarly inappropriate opposition papers to Moving Defendants' motion (*see*
Docket ## 118, 119).

state court [foreclosure] judgment itself" and the judgment itself "did not specifically direct [p]laintiffs' eviction from the [p]roperty."  (*Id.* at 11, 15).

Plaintiffs rely on this analysis to conclude that they are "wholly free to attack the state court [foreclosure] judgment and relitigate any and all matters and issues it embraces or depends on."  (Docket # 105-1 at 14-15).  Judge Geraci, however, explicitly rejected and dismissed plaintiffs' claims that they suffered a deprivation of real property without due process of law because he determined that plaintiffs did not have an ownership or any other protected property interest in the property at the time the relevant events occurred.  (Docket # 41 at 18-24).  Specifically, he found that there was no "genuine issue of material fact as to the County's ownership in fee simple of the [p]roperty at the time of the alleged deprivation"[10] or the existence of a tenancy at will or a tenancy at sufferance.  (*Id.*).  He further found that, because plaintiffs did not have a possessory interest in the property, their Fourth Amendment unlawful seizure claims also failed.  (*Id.* at 28-30).

As a result of Judge Geraci's March 13, 2020 decision, the following claims remain pending: (1) Fourteenth Amendment due process claims related to plaintiffs' personal property; (2) Fourth Amendment claims related to the warrantless entry into the property; (3) Fourth Amendment claims based on the warrantless arrest of plaintiffs; and, (4) Fourth Amendment claims based on the seizure of plaintiffs' personal property.  In reviewing the disputed demands, this Court has considered whether the requests at issue are relevant to the *remaining claims*, rather than simply connected to underlying events.  *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

---

[10]  Whether the judgment was fraudulently obtained (*see* Docket # 105-1 at 17-20) is neither an issue before this Court nor an element of or relevant to the remaining claims.

importance of the issues at stake in the action, . . . [and] the importance of the discovery in resolving the issues").

Responding Defendants have also objected to various document demands on the grounds that the requested documents are not within their possession, custody, and control. (Docket ## 115-1 at 7-8; 117 at 5-7).  According to Buzzetti and Martino, they are no longer employees of the City of Elmira and do not otherwise have a cooperation agreement with the City of Elmira that would give them access to documents.  (Docket # 115-1 at 7-8).  Maggs is also "no longer . . . associated with the Chemung County Attorney's Office."  (Docket # 117 at 14).  To the extent that a defendant objects on this basis to a request as to which the Court requires a supplemental response (as explained below), he must submit a sworn declaration that he has conducted a diligent search for responsive documents and that none are in his possession, custody, or control – in other words, that he does not have the practical ability to obtain the requested documents.[11]  *See generally Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) ("even where a party[] . . . lacks actual physical possession or custody of requested documents for purposes of Rule 34(a), such party may nevertheless be found to have *control* of the documents within Rule 34(a)'s scope of production if the party is legally entitled to the documents *or has the practical ability* to acquire the documents from a third-party[;] . . . [i]mportant factors to be considered in deciding whether a party has the practical ability to obtain access to documents in the possession of a non-party include the existence of cooperative agreements[,] . . . the extent to which the non-party has a[] stake in the outcome of the litigation, and the non-party's history of cooperating with document requests") (internal quotation omitted).

---

[11]  To the extent Responding Defendants persist in such objections, plaintiffs may seek to obtain the documents through a subpoena directed to the City of Elmira or the County of Chemung.

Finally, I turn to the general objection that some requested documents are publicly available and thus need not be produced. Cases in this Circuit are divided on the issue of whether a party can be compelled to produce documents that are publicly accessible or equally available to the requesting party. *Compare*, *e.g.*, *Charter Practices Int'l, LLC v. Robb*, 2014 WL 273855, *2 (D. Conn. 2014) (objections that a document is "available online and as such, equally available to the plaintiffs[] . . . is insufficient to resist a discovery request") (internal quotation omitted) (citing cases) *with*, *e.g.*, *S.E.C. v. Strauss*, 2009 WL 3459204, *11 (S.D.N.Y. 2009) ("[c]ourts have declined to compel production of documents in the hands of one party when the material is equally available to the other party from another source") (citing cases).

Responding Defendants are not obligated to produce copies of sections of any codes, laws, or statutes requested in the discovery demands. With respect to requests that relate to documents Responding Defendants have indicated are available through a government website, plaintiffs have replied, "[T]he official County website . . . is a confusing rabbit hole. So too, most of the documents requested are available *only* from the Chemung County's Clerk's Office. . . . If one goes to the County Clerk's Office, they're free to look at. If, however, one wants or needs copies of any of them, it costs sixty-five cents per page." (Docket # 105-1 at 28). On this record, defendants must either provide copies of the documents or supply a link to the *specific* document or information requested in response to any requests as to which they are required to provide a supplemental response.

A.    **Buzzetti and Martino**

On September 10, 2020, plaintiffs served Buzzetti and Martino with separate demands to produce documents. (Docket # 106-3). According to counsel, "due to staffing issues . . . as well as the parties being actively in litigation in the other two companion cases brought by

15

Murphy" (Docket # 115 at 1, ¶ 4), counsel did not respond to the requests until September 6, 2021.  Moreover, counsel did not appreciate that the demands served on Buzzetti and Martino contained different requests.  (*Id.*).  The September 6, 2021 response, purportedly made on behalf of both defendants, only addressed the demands propounded on Buzzetti.  (*Compare* Docket # 106-3 at 2-34 *with* Docket # 106-4).  On February 21, 2023, plaintiffs advised counsel that they had not received Martino's responses (*see* Docket # 104-5), and, on June 9, 2023, Martino served his separate response to the document demands (Docket # 106-6).  (*See also* Docket # 104-1 at 2, ¶¶ 10-11).

Plaintiffs have filed the pending motion requesting that the Court require Buzzetti to provide supplemental responses to all fifty-one document requests directed to him and require Martino to provide supplemental responses to forty-nine of the fifty-two requests directed to him. (Docket # 105-1 at 9, ¶ 70).  Plaintiffs argue that Buzzetti and Martino waived all objections by not timely responding and interposing improper objections.  (*Id.* at 5-9, ¶¶ 29-70).

A party's "waiver of [his] objections does not otherwise excuse this Court from its obligation to manage discovery in this case, . . . including limiting its scope as appropriate." *Holloway v. Dollar Tree Distrib., Inc.*, 2015 WL 3606326, *2 (D. Conn. 2015) (citing cases). Consistent with its responsibility to manage discovery, which in this case has included extensive demands, this Court has reviewed the disputed discovery demands and exercises its discretion to relieve Responding Defendants of the burden of responding to the vast majority of disputed requests, which this Court finds to be irrelevant, overbroad, duplicative, or otherwise adequately answered.

Based upon that review, the Court directs Buzzetti to provide supplemental responses on or before **March 20, 2024**, to Requests Nos. 10(b) and (c), 12, 38, 39, 46, 47, and

50.  (*See* Docket # 106-4).  Buzzetti must provide a supplemental response and produce documents responsive to Request No. 10(b) and (c)[12] – specifically, all policies and procedures relating to the placarding of – or warning that – a property has been condemned, and relating to the demolition and/or removal of buildings and structures; likewise, in response to Request No. 12, Buzzetti must provide responsive documents regarding the placarding of the property at 757 Linden Place.  Buzzetti must produce documents responsive to Requests Nos. 46 and 47 to the extent they refer to him.  Buzzetti is also instructed to produce documents responsive to Requests Nos. 38, 39, and 50.  If he has no documents responsive to these requests, he must submit an affidavit in compliance with the directions set forth *supra*.

On or before **March 20, 2024**, the Court directs Martino to provide supplemental responses and produce documents responsive to Requests Nos. 1(c) and (d),[13] 2, 10, 11, 16,[14] 17, 18, 32, 35, 36, 42, 44, 46, and 52.  (*See* Docket # 106-6).  Requests Nos. 10 and 11 are narrowed to refer to Martino.  Requests Nos. 16, 18, and 44 are narrowed to refer to the period of September 2015.  Martino must also submit the required affidavit for any requests for which he does not provide responsive documents.

Nothing in the record suggests that Buzzetti or Martino responded in bad faith to the requests for production or will do so in the supplemental responses, and this Court finds no justification for the requested imposition of sanctions.

---

[12]  As stated above, Buzzetti is not obligated to provide plaintiffs with copies of any sections of the code of ordinances.

[13]  As with Request No. 10(b) and (c) directed to Buzzetti, this request is narrowed to all policies and procedures relating to the placarding of – or warning that – a property has been condemned, and relating to the demolition and/or removal of buildings and structures.

[14]  As stated above, Martino is not obligated to provide plaintiffs with copies of the code of ordinances, but is required to provide any responsive documents reflecting the policies and procedures followed by the City of Elmira in connection with the condemnation or placarding of property, which he has in his possession, custody, or control.

### B.   **Maggs**

Plaintiffs also challenge the adequacy of Maggs's response to their first set of interrogatories and first and second demands for documents.  (Docket ## 105-3 at 58-68; 105-3 at 2-57; 106).  The vast majority of the interrogatories propounded on Maggs are irrelevant because they pertain to claims that were dismissed in Judge Geraci's March 13, 2020 Decision and Order.  Maggs is, however, directed to provide supplemental responses to Interrogatories Nos. 8, 9, 14, and 16 on or before **March 20, 2024**.  Maggs is cautioned that a response to a specific question generally may not refer to the entirety of their document production.  To the extent Maggs relies on Rule 33(d) of the Federal Rules of Civil Procedure in responding to the interrogatories, he must provide "sufficient detail to enable the interrogating party to locate and identify" the responsive business records.  *See* Fed. R. Civ. P. 33(d)(1).  To the extent a particular document does not exist, Maggs must nonetheless answer the interrogatories to the best of his ability.  *See Richard v. Dignean*, 332 F.R.D. 450, 460 (W.D.N.Y. 2019) (responding party is "obligated to make a reasonable inquiry to obtain information necessary to fully respond to" an interrogatory).

With respect to Interrogatory No. 16, I agree that the request as propounded is overbroad.  For example, the request refers to individuals who have knowledge of any facts relevant to any matters included or referred to in the pleadings – significant portions of which are no longer relevant based on Judge Geraci's March 13, 2020 Decision and Order.  As an appropriate response to this inquiry, Maggs is directed to serve a supplemental Rule 26 disclosure.  Rule 26 requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its . . . defenses."

Fed. R. Civ. P. 26(a)(1)(A)(1).  The Court is unable to evaluate the adequacy of Maggs's initial

Rule 26 disclosure because it does not appear to be part of the record before the Court.

Moreover, in response to Interrogatory No. 16, Maggs noted that he was reserving his right to

supplement his Rule 26 disclosure.  This Court is directing him to do so on or before **March 20,**

**2024**.

      As to the first demand for production of documents propounded upon Maggs, I

direct Maggs to provide supplemental responses to Requests Nos. 17, 18, 33, 34, 35, 52, 54, 56,

57, and 60 on or before **March 20, 2024**.  First, Maggs has improperly responded to nearly each

request by "reserving the right to supplement" the response and referring to the entirety of his

document production.  Maggs is instructed to supplement his answers to the identified requests

by providing all responsive documents or, if already produced, specifying the responsive

documents by bates number.  Requests Nos. 52 and 54 are narrowed to documents relating to

plaintiffs' occupation of the property in September 2015 and the disposition of their personal

belongings.  Furthermore, Maggs is instructed to respond to Requests Nos. 56 and 57 insofar as

they relate to expected or anticipated expert testimony.  As to Request No. 60, Maggs is directed

to respond by identifying any non-documentary items relied upon in preparing those portions of

Maggs's answer that relate to the remaining claims[15]; as previously noted, for those requests for

which he provided no responsive documents, he must confirm in writing that a diligent search

has been conducted and responsive documents are not in his possession, custody, or control.

      Maggs "reject[ed]" plaintiff's second set of document demands "*in toto*" as

irrelevant to the remaining claims.  (*See* Docket # 106-1).  I have reviewed those requests and

---

[15]  To the extent tangible items are responsive, applicable rules require that plaintiffs be permitted to "inspect, measure, survey, photograph, test, or sample the property or any designated object."  *See* Fed. R. Civ. P. 34(a)(2).

agree that the majority, but not all, are irrelevant.  Based upon this Court's review, Maggs must

respond to Requests Nos. 27, 36, 38, and 39 as directed herein on or before **March 20, 2024**.

Request No. 27 is limited to documents relating to plaintiffs and the Linden Avenue property on

or about September 2, 2015.  Request No. 36 is limited to transcripts that Maggs possesses or has

the practical ability to obtain; he need not pay for the preparation of transcripts.  *See Baum v.*

*Vill. of Chittenango*, 218 F.R.D. 36, 40-41 (N.D.N.Y. 2003) (refusing to order defendants to pay

for transcript costs because "parties are generally responsible for their own costs, and their

adversaries are not obligated to finance their litigation"); *see also Gaind v. Cordero*, 2011 WL

6376679, *3 (S.D.N.Y. 2011) ("[p]laintiff also alleges discovery was insufficient due to the

court's failure to command defendants to produce complete transcripts of certain depositions

relied on in defendants' summary judgment motion[;] [d]efendants, however, had no obligation

to transcribe the depositions for plaintiff[;] [r]ather, plaintiff had to do so at her own expense"),

*aff'd*, 515 F. App'x 68 (2d Cir. 2013).  Maggs is directed to respond to Requests Nos. 38 and 39.

Request No. 38 is limited to documents and information relied upon in preparing those portions

of his answer that relates to claims still pending.

　　　　　Nothing in the record suggests that Maggs or his counsel responded in bad faith to

the interrogatories or requests for production or will do so in the supplemental responses, and

this Court finds no justification for the imposition of sanctions.

## **CONCLUSION**

　　　　　For the reasons stated above, Moving Defendants' motion to compel **(Docket**

**# 104)** is **GRANTED in part** as directed herein.  Moving Defendants' request for

reimbursement of costs associated with Camilli's continued deposition **(Docket # 104)** is

**DENIED without prejudice**.  Plaintiffs' motion to compel **(Docket # 105)** is **GRANTED in part and DENIED in part** as directed herein.  Plaintiffs' request for sanctions **(Docket # 105)** is **DENIED**.

The Clerk of Court is directed to strike Docket # 126.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       March 1, 2024