UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER M. MURPHY AND
BARBARA CAMILLI,

               Plaintiffs,

       v.

COUNTY OF CHEMUNG, et al.,

               Defendants.

_____

Case # 18-CV-6628-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiffs bring various claims against Defendants Bryan Maggs, Matthew Buzzetti, Joseph Martino, and John Does 1–5, all of which arise out of Plaintiffs' allegedly unlawful ejectment from 757 Linden Place in the City of Elmira, New York ("the Property") on September 2, 2015.  On March 13, 2020, the Court issued a Decision and Order granting partial summary judgment, ECF No. 41, and Defendants have now moved for summary judgment on all of Plaintiffs' remaining claims.  ECF Nos. 132 (Defendant Buzzetti and Martino's motion), 133 (Defendant Maggs' motion).  Plaintiffs have also cross-moved for summary judgment and for reconsideration of the Court's prior Decision and Order.  ECF No. 143.  Plaintiffs also seek additional discovery.  ECF No. 140.

As explained below, Defendants Buzzetti and Martino's motion for summary judgment, ECF No. 132, is GRANTED in part and DENIED in part.  Defendant Maggs' motion for summary judgment, ECF No. 133, is GRANTED in part and DENIED in part.  Plaintiffs' motion for reconsideration, cross-motion for summary judgment, and motion for further discover under Rule 56(d), ECF Nos. 140, 143 are DENIED.

**PROCEDURAL HISTORY**

On August 31, 2018, Plaintiffs commenced this action against the County of Chemung, the City of Elmira, Bryan Maggs, Matthew Buzzetti, Joseph Martino, and five John Doe Defendants. ECF No. 1.  The Court screened the complaint under 28 U.S.C. § 1915(e)(2) and permitted Plaintiffs' Fourth Amendment, procedural due process, and substantive due process claims against the individual Defendants to proceed.  *See generally* ECF No. 5.  The Court granted leave to amend.  Plaintiffs failed to file an amended complaint, and the original complaint proceeded to service.  *See* ECF No. 9.

Defendant Maggs filed a motion to dismiss under Rule 12(b)(6),[1] ECF No. 30, which the Court converted to a motion for summary judgment because Defendant had presented matters outside of the pleadings.  *See* ECF No. 41 at 4.  In doing so, the Court granted summary judgment to Defendant Maggs on the (i) due process claims related to the Property and (ii) Fourth Amendment claim related to Plaintiffs' eviction from the Property.  *See id.* at 34.  The Court also *sua sponte* granted summary judgment on those claims to Defendants Buzzetti and Martino because, given the nature of Plaintiffs' claims, the "same ruling [would] inevitably appl[y] to all the defendants." *Id.* at 33.

The case proceeded to discovery.  Plaintiffs failed to appear for their depositions, and Defendants moved to dismiss the complaint as a sanction.  *See* ECF Nos. 76, 77.  On referral, Magistrate Judge Marian W. Payson issued a report and recommendation in which she recommended that the Court deny the motions to dismiss, which the Court adopted.  ECF Nos. 85, 88.  Since then, discovery motion practice has been extensive.  *See e.g.*, ECF Nos. 100 (Plaintiff

---

[1] Defendant Maggs styled the motion as one for judgment on the pleadings pursuant to Rule 12(c), but because the pleadings had not closed, the Court treated it as a motion to dismiss under Rule 12(b)(6).  *See* ECF No. 41 at 2–3.

Murphy's second motion for an extension of time to complete discovery), 104 (Defendants Buzzetti and Martino's first motion to compel), 105 (Plaintiff Murphy's first motion to compel).

In September 2023, Magistrate Judge Payson issued an amended scheduling order setting December 20, 2023 as the dispositive motion deadline. ECF No. 131. Defendant Maggs and Defendants Buzzetti and Martino filed motions for summary judgment on that date. *See* ECF No. 132, 133. About two weeks later, Plaintiffs filed their response in opposition to Defendants' motions as well as a motion for additional discovery under Rule 56(d) and a motion for reconsideration under Rule 54(b). *See* ECF No. 140. They also filed a "cross-motion for summary judgment under Rule 56(a) and/or reconsideration" of the Court's prior Decision and Order. *See* ECF No. 143.

In the meantime, the parties have continued to litigate their discovery disputes, and as of the date of this Decision and Order, Plaintiffs' motion for an extension of time to complete discovery and motion to compel remain pending. *See* ECF Nos. 174, 178. Also pending is a motion for sanctions filed by Defendants Buzzetti and Martino. ECF No. 181.

## FACTUAL BACKGROUND[2]

This action arises out of Plaintiffs' allegedly unlawful arrest and removal from the Property, where they were both living on September 2, 2015. Plaintiffs allege that the arrest and seizure of their personal property violated their Fourth Amendment right to be free from unreasonable seizures and their Fourteenth Amendment procedural and substantive due process rights.

---

[2] This Court takes the following facts from Defendants' statement of material facts, ECF Nos. 132-7 (Defendants Buzzetti and Martino), 133-1 (Defendant Maggs), Plaintiffs' responses to Defendants' statement of material facts (ECF Nos. 143-3, -4, Plaintiffs' statement of material facts, ECF No. 143-2, and each document's supporting material. To the extent that Plaintiffs identify material facts elsewhere, the Court considers those facts in light of their *pro se* status. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions.").

Since 2011, the Property has been the subject of multiple controversies involving City and County officials, from alleged property maintenance code violations to tax foreclosure proceedings. Most relevant here is the tax foreclosure proceeding, which the Chemung County Treasurer commenced on October 1, 2012 (the "Foreclosure Action"). ECF No. 132-7 ¶ 6; ECF No. 133-1 ¶ 25; *see* ECF No. 143-4 (stating that Defendants Maggs "initiated and orchestrated" the Foreclosure Action). Defendants Buzzetti and Martino assert that Plaintiff did not answer or otherwise object to the foreclosure notice before January 15, 2013. ECF No. 132-7 ¶ 7. Plaintiff contends that he received no notice of the action. ECF No. 143-4 ¶ 25. In fact, he asserts that no petition or foreclosure notice was either served or filed. ECF No. 143-2 ¶ 4.

In any event, a few months later, on January 10, 2013, Plaintiff Murphy filed a Chapter 13 bankruptcy petition, which stayed the foreclosure action. ECF No. 132-7 ¶ 8. About two years after filing his petition, he moved to voluntarily dismiss the Chapter 13 petition and the Bankruptcy Court entered an order dismissing the petition on February 11, 2015. ECF No. 143-2 ¶¶ 13, 14; *see also* ECF No. 132-7 ¶ 8. Judge James T. Hayden of the Chemung County Court then issued a Supplemental Decision and Judgment on August 11, 2015, in which the court concluded that foreclosure was warranted as a matter of law and that Chemung County be awarded possession of the Property. ECF No. 133-1 ¶ 26. Plaintiffs do not dispute that Judge Hayden issued that decision, but assert that it "was and is invalid and void *ab initio*, as a matter of law, and thus devoid of legal force or effect." ECF No. 143-4 ¶ 26. They therefore likewise assert that the deed conveying the Property to the County, ECF No. 133-1 ¶ 27; ECF No. 132-7 ¶¶ 11–12, did not, in fact, convey any "legal or equitable title" to or "right, claim or interest" in the Property to the County. ECF No. 143-4 ¶ 27.

Regardless, after that deed was recorded, Defendant Maggs sent a letter to the employees of the City of Elmira, including the Police Department and Fire Department, advising them that the Property had been deeded to the County.  ECF No. 132-7 ¶ 13; ECF No. 133-1 ¶ 30.  He also informed the City that because the Property was "unsafe, dangerous, and that it endangered the health, safety and welfare of the public" and had been condemned, ECF No. 132-7 ¶ 2; ECF No. 133-1 ¶ 28, it "needed to be prepared for demolition and demolished."  ECF No. 133-1 ¶ 29; *but see* ECF No. 143-4 ¶¶ 21–23, 29 (denying that the Property was placarded as unfit for human habitation and condemned and that it needed to be prepared for demolition and demolished).  Accordingly, Defendant Maggs gave City employees permission to enter the Property to prepare it for demolition.  ECF No. 133-1 ¶ 30.  In the same letter, he requested that the City charge anyone found inside with trespass or "any other appropriate charge."  *Id.*  According to Maggs, he did not know that Plaintiffs would be present and arrested.  ECF No. 133-1 ¶ 40; *but see* ECF No. 143-4 ¶ 40 (denying this fact).  Nor did his letter mention Plaintiffs' personal property or provide instructions concerning its disposition.  ECF No. 133-1 ¶ 41.  Beyond that letter, Defendant Maggs had no communication with the City or City employees regarding Plaintiffs' arrest and removal from the Property or the disposition of any personal property inside the home.  ECF No. 133-1 ¶ 34; *but see* ECF No. 143-4 ¶ 34 (denying this fact).  Nor was Maggs present on the property in the time leading up to, during, or after Plaintiffs' September 2 arrest.  ECF No. 133-1 ¶ 33; *see* ECF No. 143-4 ¶ 33 ("neither admit[ting] nor deny[ing] that Maggs was not personally present . . . .").

According to Plaintiffs, they first learned that the County claimed ownership of the Property on the day of their arrest, September 2, 2015.  ECF No. 143-2 ¶ 38.  That day, while Plaintiffs were present, City police officers entered the Property to inspect it in preparation for demolition.  ECF No. 132-7 ¶ 15; ECF No. 143-2 ¶ 39.  As Plaintiffs tell it, the police officers

forced their way into the Property without a warrant of any kind, breaking down the front door with a battering ram.  ECF No. 143-2 ¶¶ 39–40.  Plaintiffs refused to leave the house, and the police escorted them outside and arrested them.  ECF No. 132-7 ¶ 16; ECF No. 143-2 ¶ 39.  Plaintiffs received appearance tickets and were released.  ECF No. 132-7 ¶ 17.

According to Defendants, Plaintiffs returned to the Property later that day to retrieve the animals they kept in their home, but were turned away.  ECF No. 132-7 ¶ 18; *but see* ECF No. 143-3 ¶ 18 (denying this fact).  Later, Plaintiffs were able to access 757 Linden to remove personal belongs, animals, pet supplies, and money.  ECF No. 132-7 ¶ 18; *but see* ECF No. 143-3 ¶ 18 (denying this fact).  Eventually, Plaintiff Murphy and the County entered into an agreement pursuant to which Plaintiffs could enter 757 Liden during daylight hours from October 26, 2015 to November 2, 2015 to retrieve personal belongings.  ECF No. 132-7 ¶ 19; *but see* ECF No. 143-3 ¶ 19 (denying this fact).

The day after that agreement expired, Chemung County Court issued an order stating that the foreclosure judgment was again operative and remained in effect.  ECF No. 132-7 ¶ 20; *but see* ECF No. 143-3 ¶ 20 (denying this fact).  The County demolished the house on the Property on December 18, 2015.  ECF No. 132-7 ¶ 21; ECF No. 132-8.

## LEGAL STANDARD

### I.  Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  In deciding whether there is a genuine dispute as to a material fact, the court is not to evaluate credibility, and must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 454 (2d Cir. 2010).

Once the moving party has met its burden, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The nonmoving party may not, therefore, "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).  Nor is a "mere scintilla of evidence" in support of the nonmoving party enough.  *Anderson*, 477 U.S. at 252.  The nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary

materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading. . . .").  But, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," the court must deny summary judgment.  *Anderson*, 477 U.S. at 248.

## II.    Reconsideration Under Rule 54(b)

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  "A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment."  *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982).

A litigant seeking reconsideration must set forth "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015) (quoting *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995)).  "To merit reconsideration under Rule 54(b), a party must show 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'"  *Micolo v. Fuller*, No. 15-CV-06374, 2017 WL 2297026, at *2 (W.D.N.Y. May 25, 2017) (quoting *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).  If the moving party presents no legal authority or facts that the court failed to consider, then the motion to reconsider should be denied.  *See Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").  "These criteria are strictly construed against the moving party so as to avoid

repetitive arguments on issues that have been considered fully by the court." *Richard*, 126 F. Supp. 3d at 337 (internal quotation marks and citations omitted).

Further, the Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Coopers & Lybrand*, 322 F.3d at 167 (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). "The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (citations omitted). However, application of this doctrine is discretionary and does not limit the court's power to review its decisions prior to final judgment. *Id.*; *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 142 (E.D.N.Y. 2009).

## DISCUSSION

### I.     Plaintiffs' Motions

Plaintiffs seek reconsideration of the Court's prior Decision and Order granting partial summary judgment to Defendants and summary judgment on the question of who owned the Property.  They also seek additional discovery under Rule 56(d).  As explained below, Plaintiffs' motions are denied.

### a.  Motion for Reconsideration[3]

Plaintiffs argue that the Court should reconsider its prior ruling that they did not have a property interest in the Property on September 2, 2015, its decision to convert Defendant Maggs' motion to dismiss into a motion for summary judgment, and its *sua sponte* determination that Defendants Buzzetti and Martino were also entitled to summary judgment on the issues Defendant Maggs raised.  None of Plaintiffs' arguments warrant reconsideration.  Their motion is denied.

### i.  Plaintiffs' Property Interest in the Property

Plaintiffs seek reconsideration of the Court's prior ruling that Plaintiffs had no property interest in the Property.  This request is denied.

Plaintiffs' renewed challenge to the Court's determination that the County owned the Property is nothing more than an attempt to relitigate an issue the Court has already decided: that as a result of the August 2015 foreclosure judgement, the County owned the Property in fee simple on September 2, 2015.  ECF No. 41 at 19.  As Plaintiffs argued in opposition to Defendant Maggs' first motion for summary judgment, they argue that Defendants obtained the foreclosure judgment through fraud.  *Compare* ECF No. 140 at 38 ("And that's exactly why Maggs had to lie and cheat to get the foreclosure judgment that was the linchpin of defendants' whole agenda and gameplan.  Maggs had to proceed purely ex parte—because he had to make sure that [Plaintiff Murphy] received no notice and had no opportunity to respond or defend."), *with* ECF No. 38 ¶ 44 ("[Defendants] deliberately, purposefully went to great lengths to insure that I would receive no notice whatsoever of their ex parte actions and chicanery in obtaining the so-called 'judgment' signed by Judge Hayden on August 11, 2015."); *see also* ECF No. 143-1 at 40 ("The foreclosure

---

[3] Plaintiffs move both for reconsideration and summary judgment on the issue of whether they had a property interest in the Property on September 2, 2015.  ECF No. 143-1 at 57.  Because the Court declines to reconsider its prior determination that they did not, Plaintiffs' cross-motion for summary judgment on this issue is also DENIED.

judgment is void because Maggs perpetrated a fraud on the court to obtain it by default on an ex parte basis."). They likewise reiterate their argument that the foreclosure judgment was void *ab initio* because of jurisdictional defects. *Compare* ECF No. 36 at 34 ("The jurisdictional defects involved were and are non-curable, non-fixable, non-waivable and fatal."), *with* ECF No. 143-1 at 41 ("Here, the purported foreclosure judgment is void for numerous reasons and fatal subject matter jurisdictional defects). Again, Plaintiffs merely seek to relitigate the Court's conclusion that the foreclosure judgment resulted in the County obtaining ownership of the Property in fee simple. This is not a proper basis for reconsideration. *See Shrader*, 70 F.3d at 257.

Likewise, Plaintiffs have failed to point to any court decisions "that might reasonably be expected to alter the conclusion" that Plaintiffs had no lesser property interest in the Property. *Richard*, 126 F. Supp. 3d at 337 (quoting *Shrader*, 70 F.3d at 257). Nor have the demonstrated that this conclusion amounts to clear error or a manifest injustice. *See Micolo*, 2017 WL 2297026, at *2. Plaintiffs are therefore not entitled to reconsideration of this conclusion and the Court declines to revisit its determination that Plaintiffs were not tenants—whether at sufferance or at will. *See* ECF No. 41 at 20–24.

Plaintiffs' motion for reconsideration of the Court's determination that Plaintiffs had no property interest in the Property on September 2, 2015 is therefore denied.

### ii. Converting Defendant Maggs' Motion to Dismiss Into a Motion for Summary Judgment

Plaintiffs argue that it was both clear error and a manifest injustice for the Court to convert Defendant Maggs' Rule 12 motion into a Rule 56 motion for summary judgment. The Court disagrees.

A district court may not convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment "without sufficient notice to an opposing party and an opportunity for that

party to respond." *Groden v. Random House, Inc.*, 61. F.3d 1045, 1052–53 (2d Cir. 1995) (citing *In re G. & A. Books, Inc.*, 770 F.2d 288, 294–95 (2d Cir. 1985), *cert. den.*, 475 U.S. 1015 (1986)). The "essential inquiry" is whether the opposing party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d at 294–95.  As for *pro se* plaintiffs, the Second Circuit has "reversed a district court's judgment where 'it is not clear from the record that [the *pro se* plaintiff] had been informed or otherwise understood the nature and consequences of a motion for summary judgment." *Alford v. NFTA-METRO*, No. 23-197, 2024 WL 2239014, at *1 (2d Cir. May 17, 2024) (summary order) (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999)). In *Alford*, the Second Circuit vacated the district court's judgment in favor of defendants where the *pro se* plaintiff had "been given no information regarding her ability to request discovery," despite receiving this District's notice to *pro se* litigants, which is aimed at satisfying the actual notice requirement set out in *Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) (the "*Irby* notice").  Although the plaintiff in *Alford* made no effort to request discovery, the Second Circuit determined that "nothing in the record [reflected] that [she] even knew that she could ask for discovery, much less how she would go about requesting it." *Id.* at *2.  The Second Circuit concluded that "the failure of the [district court]—and Defendants—to provide [plaintiff]" with the required notice warranted remand.  *Id.*

Here, Plaintiffs received adequate notice and, unlike the plaintiff in *Alford*, were aware of their ability to seek discovery and how to do so.  As the Court explained in its Decision and Order granting partial summary judgment to Defendants, Plaintiffs had actual notice that the Court might convert Defendant Maggs' Rule 12 motion into a Rule 56 motion for summary judgment.  *See*

ECF No. 41 at 7.  While the Court acknowledges that, as in *Alford*, the *Irby* notice Plaintiffs received did not inform them that they could seek discovery, *see* ECF No. 30-3, the record here indicates that Plaintiffs were aware that they were entitled to discovery and opposed conversion on the basis that they had not yet had the opportunity to conduct discovery.  *See* ECF Nos. 36 at 10, 38 ¶¶ 11, 17.  And, as the Court noted, Plaintiffs also sought an extension of time to respond to a summary judgment motion not because they needed discovery, but because "putting together the facts and the law will be time-consuming [and] labor-intensive."  ECF No. 38 ¶ 42.  Moreover, Plaintiffs were confident that they could defeat the summary judgment motion "based on the very same documentation upon which [Defendant Maggs] relied—and a whole lot more incontrovertible evidence," ECF No. 33-2 ¶ 47.  Plaintiffs' assertion that the question of ownership could be resolved by reference to specific documents—records of judicial proceedings and title documents among them—also "strongly implie[d] that [they had] ready access to or [were] in possession of the documentary evidence that purportedly will vindicate their position."  ECF No. 41 at 7 (citing ECF No. 1 ¶ 63).  Finally, Plaintiffs have disavowed additional discovery under Rule 56(d) as a basis for either their motion for reconsideration or Defendant Maggs' earlier summary judgment motion.  *See* ECF No. 143-1 at 49 ("We say that our failure to specifically request discovery under Rule 56(d) is not dispositive or fatal.  In other words, [Defendant Maggs'] motion had to be denied anyway on the undisputed record facts then before the Court."); *see also id.* at 47 ("We did not need discovery to oppose [Defendant] Maggs' motion for summary judgment regarding ownership of the real property . . . We did not need or request discovery under Rule 56(d) as to any of the other issues . . . [because] none of the issues raised by [Defendants] on their recent now-pending motions . . . were raised on [the] prior motion.").

Accordingly, although the *Irby* notice that Plaintiffs received did not specifically advise Plaintiffs that they were entitled to discovery and that they could seek additional discovery under Rule 56(d), the Court did not clearly err in concluding that Plaintiffs had received notice sufficient to permit the Court to convert a Rule 12 motion into a Rule 56 motion. For the same reasons, Plaintiffs have failed to demonstrate that conversion represents a "manifest injustice" in need of correction. *Micolo*, 2017 WL 2297026, at *2. Plaintiffs instead simply reiterate many of the arguments they raised in opposition to conversion in the first instance. In doing so, they "seek[] solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. That is not an appropriate basis for reconsideration, and Plaintiffs' motion is therefore denied.

### iii.  Granting Summary Judgment to Non-Moving Defendants

Finally, Plaintiffs also argue that the Court erred in granting summary judgment to the non-moving Defendants. The Court rejects this assertion.

As the Court stated in its prior Decision and Order, "[d]istrict courts have the authority to enter summary judgment *sua sponte* 'so long as the losing party was on notice that she had to come forward with all her evidence.'" ECF No. 41 at 32 (quoting *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384 (7th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))); *see also First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114 (2d Cir. 1999) ("District courts are widely acknowledged to possess the power to enter summary judgment *sua sponte* . . . only so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." (internal quotation marks and citations omitted)).

The Court's prior Decision and Order granted Defendant Maggs' motion for summary judgment on Plaintiffs' claims related to the Property because "Plaintiffs lacked a protected property interest as a matter of law." ECF No. 41 at 33. As the Court further noted, this conclusion

14

"inevitably applie[d] to all the defendants," and, therefore, Defendants Buzzetti and Maggs were entitled to summary judgment on the procedural and substantive due process claims related to the property. *See id.* at 32–33. For the same reasons, the Court also granted summary judgment to Defendants Buzzetti and Maggs as to the Fourth Amendment claim arising out of Plaintiffs' ejectment from the Property. *See id.* at 34.

Doing so was neither clear error nor a manifest injustice warranting reconsideration. "[A]s long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *First Fin. Ins. Co.*, 193 F.3d at 115. Plaintiffs had such an opportunity with respect to the question of whether they had a protected property interest in the Property. *See* ECF No. 36 at 20–44 (setting out Plaintiffs' arguments that they had a protected property interest). Moreover, because, with respect to this issue, Defendants Buzzetti and Martino are in the same position as Defendant Maggs, there was no reason to conclude that Plaintiffs had the ability to "supplement the record with evidence that might create an issue of fact." *First Fin. Ins. Co.*, 193 F.3d at 115; *see also* ECF No. 143-1 at 47 (acknowledging that Plaintiffs did not need discovery to oppose Defendant Maggs' motion for summary judgment regarding ownership of the real property).

The Court is persuaded that was neither clear error nor a manifest injustice to grant summary judgment to the non-moving defendants, Buzzetti and Maggs, and reconsideration is therefore not warranted. *See Micolo*, 2017 WL 2297026, at *2

### b. Additional Discovery

Plaintiffs argue that they are entitled to further discovery under Rule 56(d). Defendants Buzzetti and Martino argue that Plaintiffs are not entitled to any further discovery because they

have "responded to numerous document requests [and] interrogatories, and depositions have been conducted."  ECF No. 149 ¶ 5.  Defendant Maggs argues that the material sought is irrelevant, he does not possess the documents sought, and that he has produced all documents relevant to Plaintiffs' claims.  ECF No. 152 at 7.  As explained below, the Court agrees that Plaintiffs are not entitled to further discovery under Rule 56(d).

"A party resisting summary judgment on the ground that it needs additional discovery . . . must submit an affidavit . . . showing: (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Lunts v. Rochester City Sch. Dist*., 515 F. App'x 11, 13 (2d Cir. 2013) (summary order) (affirming denial of *pro se* plaintiff's request for further discovery).  "It is well established that [a] trial court may properly deny further discovery under Rule 56(d) if the nonmoving party has had a fully adequate opportunity for discovery."  *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020) (summary order) (internal quotation marks omitted) (affirming denial of Rule 56(d) request that "was filed months after the close of discovery and raised the same arguments as [the plaintiff's] earlier motions to compel").

With one exception, Plaintiffs do not identify how the facts they seek are reasonably expected to create a genuine issue of material fact.  That alone is enough to deny Plaintiffs' request for additional discovery under Rule 56(d) with respect to the vast majority of the information they seek.  *See Lunts*, 515 F. App'x at 13 ("The failure to file a Rule 56(d) affidavit sufficiently explaining the need for additional discovery 'is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'").  As for the exception—information related to the John Doe Defendants—Plaintiffs have not demonstrated that they are entitled to additional

16

discovery under Rule 56(d) because, other than conclusory assertions that Defendants have prevented Plaintiffs from learning the identities of the John Doe Defendants, *see e.g.*, ECF No. 143-1 at 21, they have failed to explain the efforts they have made to obtain that information and why they have been unsuccessful in doing so. *See Lunts*, 515 F. App'x at 13. Accordingly, they have failed to demonstrate that they are entitled to further discovery to oppose Defendants' summary judgment motions under Rule 56(d).

Plaintiffs' motion for additional discovery under Rule 56(d) is therefore denied.

## II.    Defendants' Motions for Summary Judgment[4]

Defendants' Buzzetti and Martino assert that they are entitled to summary judgment on each of Plaintiffs' remaining Fourth Amendment and Fourteenth Amendment claims both on the substance and because Defendant Buzzetti and Martino are protected by absolute and qualified immunity, respectively. They also assert that Plaintiffs' claims against the John Doe defendants must be dismissed because Plaintiffs have failed to identify them in the over five years since Plaintiffs filed their complaint. Defendant Maggs, on the other hand, argues that he is entitled to summary judgment because he was not personally involved in the alleged constitutional violations and because he is entitled to either sovereign immunity or qualified immunity.

---

[4] The Court rejects Plaintiffs' argument that the Court must treat Defendants' motions as motions for reconsideration under Rule 54(b) rather than motions for summary judgment under Rule 56 because, in Plaintiffs' view, "all the matters and issues raised on their so-called 'motion[s] for summary judgment' were already decided and determined by this Court in its March 13, 2021 Decision and Order," ECF No. 143-1 at 31. To the extent that any Defendant has filed a second motion for summary judgment, the Court exercises its "considerable discretion" to consider that motion because doing so will not meaningfully delay trial and there is no indication that any Defendant acted in bad faith in bringing a second summary judgment motion. *Elliot*, 649 F. App'x at 33 (quoting *Sira v. Morton*, 380 F. 3d 57, 68 (2d Cir. 2004)); *Frederick*, 515 F. Supp. 3d at 33; *see also Sirico v. British Airways PLC*, No. 98-CV-4938, 2002 WL 113877, at *1 n.2 (E.D.N.Y. Jan. 22, 2002) (considering defendant's second summary judgment even where it raised issues presented in the first).

### a. Claims against John Doe Defendants

Defendants Buzzetti and Martino argue that all claims against the John Doe Defendants should be dismissed because Plaintiffs have had ample time to identify the John Doe Defendants and have failed to do so in over five years.  Plaintiffs argue that they have not been able to identify the John Doe Defendants because Defendants have refused to comply with their discovery obligations.  As explained below, the Court declines to dismiss the claims against the John Doe defendants at this stage of the proceedings.

"Courts typically refrain from dismissing suits against 'John Doe' defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Cruz v. Fischer*, 175 F. Supp. 3d 33, 35 (W.D.N.Y. 2016).  Although Plaintiffs have had some discovery, motions to compel remain pending.  *Cf. Blake v. Race*, 487 F. Supp. 2d 187, 187 n.1 (E.D.N.Y. 2007) (dismissing claims against John Doe defendants where discovery was complete).  Moreover, Plaintiffs do address the role of the unnamed police officers in the alleged violations of their rights conduct.  *Cf. id.* (dismissing claims against John Doe defendants where summary judgment response did not specify the role of unnamed defendants in infringing conduct).  For example, they state that the police officers "broke down the front door" with a battering ram and "entered the house, forcibly removed plaintiffs and placed both of them under arrest, handcuffing them both behind their backs."  ECF No. 143-2 ¶ 39.  They also state that they did so without a warrant.  *Id.* ¶ 40.  Accordingly, while courts often dismiss claims against defendants who remain unnamed at summary judgment, the Court concludes that it would be premature to do so here.

Nevertheless, the Court notes that, should Plaintiffs come to identify the John Doe Defendants through discovery, John Doe substitutions "may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met."  *Hogan v. Fischer*, 783 F.3d 509, 517 (2d Cir.

2013) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)).  This includes showing that Plaintiffs "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant[s] by name." *Id.* at 519 (applying N.Y. C.P.L.R. § 1024 under Federal Rule of Civil Procedure 15(c)(1)(A)).

Because motions to compel remain pending and because Plaintiffs have identified the conduct of the unnamed police officer Defendants in the alleged constitutional violations, the Court concludes that dismissing the claims against the John Doe Defendants would be premature. Defendants Buzzetti and Martino's motion to dismiss those claims is therefore denied.

### b.  Defendant Maggs' Personal Involvement

Defendant Maggs asserts that he is entitled to summary judgment on all Plaintiffs' claims because he was not personally involved in the September 2, 2015 search or arrest and was not involved in the disposition of Plaintiffs' personal property.  Plaintiff argues that Maggs personally initiated and directed the search and subsequent arrest in collaboration with Defendants Buzzetti and Martino.

To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).  To do so, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Smith v. Arrowood*, No. 21-CV-6318, 2022 WL 3927884, at *7 (W.D.N.Y. Aug. 31, 2022) (allegation that defendant directed law enforcement officers to surround a house not enough to allege personal involvement).

According to Defendant Maggs, the extent of his involvement was that he wrote "a letter to the City Attorney, noting that Chemung County owned the Property, and request[ed] that any trespassers be dealt with as appropriate" to prepare the Property for demolition.  ECF No. 133-8 at 12; *see also* ECF No. 133-1 ¶ 30.  In fact, he "did not even have knowledge whether Plaintiff or any other person was in the premises."  ECF No. 133-1 ¶ 35.  Nor was he present at the Property on the day of Plaintiffs' arrest.  *Id.*

In deposition testimony, Plaintiffs appeared to agree with Defendant Maggs that he was not present at the Property during the search and arrest, a fact that they now "neither admit nor deny."  ECF No. 143-4 ¶ 33.  Plaintiff Murphy stated during his deposition that Defendant Maggs was not there, ECF No. 133-3 at 41, while Plaintiff Camilli stated that, as she could recall, she "did not see him there that day.  ECF No. 133-4 at 109.  In response to Defendant Maggs' summary judgment motion, they now claim that they "do not know" whether he was present but nevertheless argue that he was personally involved in the events of September 2, 2015.  *See* ECF No. 143-1 at 22–27.[5]

In any event, Defendant Maggs has demonstrated that he is entitled to summary judgment because Plaintiffs have failed to raise a genuine dispute of material fact as to his personal involvement in the alleged violations of Plaintiffs' Fourth Amendment rights.  Defendant Maggs states that his involvement was limited to sending the August 24, 2015 letter, which stated that the County owned the Property, gave City employees permission to enter the premises, and requesting

---

[5] In their response to Defendant's Local Rule 56(a)(1) statement, Plaintiffs neither admit nor deny that Defendant Maggs was not present during the search and arrest.  Under Local Rule 56(a)(2), the Court could deem these facts admitted because such a response does not "specifically controvert[]" Defendant Maggs' statement.  *See N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005).  However, because Plaintiffs are proceeding *pro se*, the Court will consider the substance of Plaintiffs' assertions and the evidence supporting them rather than deeming this fact admitted.  *See e.g.*, *McChriston v. Diversified Consultants, Inc.*, No. 18-CV-185, 2019 WL 4418580, at *3 (S.D.N.Y. June 7, 2019), *report and recommendation adopted*, 2019 WL 4418580 (S.D.N.Y. July 8, 2019).

the City to proceed with trespass charges against any person found on the premises.  *See* ECF No. 133-1 ¶ 7; *see* ECF No. 1 at 40.  Plaintiffs deny Maggs' assertion, stating that he "did more than write the letter . . . He ***personally*** instigated, directed, and orchestrated the actions of all City Defendants on and after September 2, 2015.  ECF No. 143-4 ¶ 7 (emphasis in original).  They further assert that they have "personal knowledge" of conversations between Defendants Maggs, Buzzetti, and Martino that would undermine Maggs' assertion that he had no other communication with the City or City employees regarding Plaintiffs' arrest and removal from the property or the handling of their personal property.  *See* ECF No. 143-4 ¶ 34; *see also* ECF No. 133-1 ¶ 34. Plaintiffs do not disclose what Defendant Maggs, Buzzetti, and Martino actually said during these conversations.

Plaintiffs do, however, point to emails and letters between Maggs and others that discuss the Property and how to handle it.  To the extent that the emails and letters are relevant to Plaintiffs' claims, they do not create a genuine dispute of material fact as to whether Maggs was personally involved in the alleged violation of Plaintiffs' Fourth Amendment rights.  *See e.g.*, ECF No. 109 at 32 (letter confirming expiration of site entry agreement and stating that County would not allow further access to the Property), 35–36 (letter asking County Buildings and Grounds Superintendent to remove boards from property to permit Plaintiff Murphy to enter and retrieve personal items); ECF No. 110 at 5–6 (discussing whether Fire Marshal would treat Property as emergency teardown which would determine how asbestos and lead would be handled).

As to Plaintiffs' Fourth Amendment claims, neither these communications nor the September 2, 2015 letter demonstrate that Defendant Maggs directly violated Plaintiffs' right to be free from unreasonable searches and seizures.  Even if the August 2015 communication could be read to suggest that, as Plaintiffs argue, the police officers who entered the Property, seized

Plaintiffs' personal property, and arrested them were Defendant Maggs' agents, that would not be enough to raise a question of fact as to whether he directly violated Plaintiffs' Fourth Amendment rights.  *See Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 167 (W.D.N.Y. 2020) ("[T]he theory of *respondeat superior* is not available in a § 1983 action) (citing *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)); *see also Tangreti*, 983 F.3d at 618; *Arrowood*, 2022 WL 3927884, at *7. The evidence, including Plaintiffs' deposition testimony, demonstrates that Defendant Maggs was not present at the Property on September 2, 2015.  It therefore demonstrates that he did not enter the Property, arrest Plaintiffs, or seize their property on that date.  Accordingly, Plaintiffs have failed to demonstrate that a genuine dispute of material fact exists as to Defendant Maggs' personal involvement in the alleged violations of their Fourth Amendment rights.

Plaintiffs have raised a genuine dispute of material fact as to Defendant Maggs' personal involvement with respect to their Fourteenth Amendment due process claim, however.  To the extent that Plaintiffs allege that the post-deprivation remedy—the site entry agreement—was inadequate, Defendant Maggs has failed to demonstrate that he was not personally involved in that violation of Plaintiffs' Fourteenth Amendment due process rights.  Plaintiffs have pointed to evidence that demonstrates his involvement in, among other things, coordinating Plaintiffs' access to the Property while the site entry agreement was in effect.  *See e.g.*, ECF No. 109 at 35–36, 39–40; ECF No. 110 at 36.  For example, Defendant Maggs directed the County Buildings and Grounds Superintendent to remove boards from the Property to allow Plaintiff Murphy to enter. *See* ECF No. 109 at 35–36.  He also informed Plaintiffs on November 4, 2015 that the site entry agreement had expired and that the County would not allow Plaintiffs "any further access to [the Property]."  ECF No. 109 at 32.  If credited, these facts would seriously undermine Defendant Maggs' assertion that he "had no knowledge or involvement in the disposition of [Plaintiffs']

personal property.  ECF No. 133-8 at 15.  Accordingly, Plaintiffs have raised a genuine dispute of material fact as to whether Defendant Maggs personally interfered with Plaintiffs' interest in their personal property, and he is not entitled to summary judgment on that basis.

The Court therefore grants Defendant Maggs' motion for summary judgment with respect to his personal involvement in the alleged violations of Plaintiffs' Fourth Amendment rights but denies it with respect to the alleged violations of Plaintiffs' Fourteenth Amendment due process rights.

### c.  Defendant Buzzetti's Absolute Immunity

Defendant Buzzetti asserts that he is entitled to absolute immunity because he was, as Assistant Corporation Counsel for the City of Elmira, acting in a prosecutorial role.  Plaintiffs argue that he did not have authority to prosecute state criminal offenses and that he engaged in investigatory conduct that is not entitled to absolute immunity.  As explained below, the Court agrees with Defendant Buzzetti.

A prosecutor "has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction.'"  *Shmueli v. City of New York.*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)).  But, while "[p]rosecutors enjoy absolute immunity for 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' . . . '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."  *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  Absolute immunity is a complete bar to damages liability

23

under Section 1983. *Alroy v. City of New York L. Dep't*, 69 F. Supp. 3d 393, 402 (S.D.N.Y. 2014) (citing *Butz v. Economou*, 438 U.S. 478, 514, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978))

Courts in the Second Circuit have concluded that town or city attorneys may invoke absolute immunity if they have been delegated the authority to prosecute certain offenses and their actions otherwise meet the ordinary requirements for absolute immunity. *See Verbeek v. Teller*, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001) (alleged act of bringing charges was prosecutorial function performed by defendant in role as counsel appointed by village to prosecute disciplinary charges and allegations that defendant acted outside of authority did not negate entitlement to absolute immunity); *Weinberg v. Vill. of Clayton, N.Y.*, No. 17-CV-21, 2018 WL 4214363, at *10 (N.D.N.Y. Mar. 21, 2018) (village attorney was absolutely immune from liability for role in civil enforcement and criminal proceedings even though plaintiffs contended that defendant acted as organizational and governmental counsel because conduct at issue involved prosecuting civil and criminal proceedings).

Plaintiffs point to evidence suggesting that the Chemung County District Attorney did not delegate authority to prosecute New York Penal Law offenses to Buzzetti. *See* ECF No. 143-1 at 17. But "[f]or purposes of prosecutorial immunity under § 1983—a question of federal law—the question is whether [the defendant's] conduct was functionally prosecutorial, not whether they had a proper delegation of prosecutorial authority under state law." *Weinberg v. Vill. of Clayton, N.Y.*, No. 17-CV-21, 2018 WL 4214363, at *10 (N.D.N.Y. Mar. 21, 2018) (citing *Buckley*, 509 U.S. at 269). In other words, courts apply a "functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (internal quotation marks and citations omitted); *see also Bernard v. Cnty. of Suffolk*, 365 F.3d 495, 503 (2d

Cir. 2004). The Court must therefore consider the nature of Buzzetti's conduct in the alleged constitutional violations.

Plaintiffs appear to argue that two sets of acts defeat Defendant Buzzetti's assertion of absolute immunity because they are outside of the duties of a prosecutor. First, they argue that he directed police officers to enter their home and arrest them. *See* ECF No. 143-1 at 10. Second, they also appear to assert that Buzzetti (a) entered the Property to inspect it prior to demolition and (b) orchestrated the September 2, 2015 search and seizure. *See* ECF No. 143-1 at 18. These assertions, with evidentiary support, could undermine Defendant Buzzetti's claim of immunity. *See e.g.*, *Barbera v. Smith*, 836 F.2d 96, 100–01 (2d Cir. 1987) (distinguishing between supervision and interaction with law enforcement agencies in acquiring evidence from the organization and evaluation of evidence to seek a warrant, indictment, or order or to try a case). But because Plaintiffs fail to provide evidentiary support for these assertions, they amount to no more than speculation, and are therefore insufficient to defeat Buzzetti's assertion of absolute immunity. *Malik*, 841 F. App'x at 284; *Knight*, 804 F.2d at 12.[6]

Because there is no evidence in the record that Defendant Buzzetti engaged in investigative or administrative conduct, he is entitled to absolute immunity from all of Plaintiffs' claims.

### d. Fourth Amendment Claims

Plaintiffs' remaining Fourth Amendment claims arise out of Defendants' warrantless (1) entry into the Property, (2) arrest of Plaintiffs, and (3) seizure of Plaintiffs' personal property. Because Defendant Maggs was not personally involved in this conduct and Defendant Buzzetti is

---

[6] The Court previously came to the same conclusion in granting Buzzetti absolute immunity from malicious prosecution and equal protection claims arising in part out of the 2015 trespassing prosecution of Plaintiff Murphy that followed the arrest at issue in this case. *See Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *5–6 (W.D.N.Y. Sept. 12, 2023).

entitled to absolute immunity, these claims remain pending only against Defendant Martino.  The Court considers each in turn.

### i. Warrantless Entry

The Fourth Amendment protects individuals' right to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy.  *United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006).  The Fourth Amendment "does not protect all subjective expectations of privacy, but only those that society recognizes as 'legitimate.'" *Cassidy v. Chertoff*, 471 F.3d 67, 76 (2d Cir. 2006) (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995)).  Therefore, to "prove an illegal search claim, a [plaintiff] must demonstrate (1) that he had an expectation of privacy that society is prepared to consider reasonable and (2) that he acted in a way with respect to the property in question that indicated a subjective expectation of privacy."  *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 181-82 (2d Cir. 2004).

Although common-law property concepts "do not control the Fourth Amendment inquiry," *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997), the Second Circuit has stated that "[a] mere trespasser has no Fourth Amendment protection in premises he occupies wrongfully." *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980).  Courts in this Circuit therefore frequently reject Fourth Amendment unlawful entry claims by trespassers or squatters.  *See e.g.*, *Willson v. Sessoms-Newton*, No. 14-CV-106, 2017 WL 3575240, at *11 (E.D.N.Y. Aug. 17, 2017) (granting summary judgment on unlawful entry claim); *Gill v. City of New York*, No. 15-CV-5513, 2017 WL 1097080, at *6 (E.D.N.Y. Mar. 23, 2017) (dismissing unlawful entry claim); *Lagasse v. City of Waterbury*, No. 09-CV-391, 2011 WL 2709749, at *9-10 (D. Conn. July 12, 2011) (granting summary judgment on warrantless entry claim); *Washington v. St. Albans Police Dep't*, 30 F.

Supp. 2d 455, 457–58 (D. Vt. 1998) (granting summary judgment on warrantless entry claim).  At least one district court has permitted a Fourth Amendment unlawful entry claim to survive a motion to dismiss where the plaintiffs' "initial presence was lawful and there had been no effort to evict them." *Bonner v. Town of Brookhaven*, No. 22-CV-4690, 2023 WL 6812276, at *3 (E.D.N.Y. Oct. 16, 2023).  Another has held that squatters stated a § 1983 claim where they alleged that the property owner had acquiesced in their occupation, thereby creating a tenancy.  *Cf. Walls v. Giuliani*, No. 95-CV-2494, 916 F. Supp. 214, 220–22 (E.D.N.Y. 1996).

The Court has already determined that the Property belonged to the County, not Plaintiffs, on September 2, 2015.  ECF No. 41 at 18–24.  Plaintiffs do not assert that the County gave them permission to occupy the Property; they instead assert that they were "lawfully occupying [their] home" for reasons that the Court has already rejected: that the foreclosure judgment was invalid and that they were entitled to a proceeding under Article 7 of the New York Real Property Actions and Proceedings Law.  ECF No. 143-1 at 30.  But as explained above, Plaintiffs have not demonstrated that they are entitled to reconsideration of the Court's determination that the County owned the Property or that Plaintiffs were neither tenants at will nor tenants by sufferance.  Accordingly, the Court reaffirms its prior conclusion that only the County, not Plaintiffs, had a possessory interest in the property.

Accordingly, even if Plaintiffs' initial lawful presence on the Property could give rise to a reasonable expectation of privacy, *see Bonner*, 2023 WL 6812276, at *3, *Walls*, 916 F. Supp. at 220–22, the County's consent was enough to permit the police officers' entry.  The Fourth Amendment's prohibition of warrantless entry does not apply to "situations in which voluntary consent has been obtained either from the individual whose property is searched or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177,

181 (1990) (internal citations omitted).  A third party's consent will validate a search of places in which another has a privacy interest if two conditions are met: the third party must have (1) access to the area searched and (2) at least one of (a) common authority over the area; (b) a substantial interest in the area; or (c) permission to gain access to the area.  *See Snype*, 441 F.3d at 136 (quoting *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 53 (2d Cir. 2003)).  Moreover, even where the third party did not have actual authority to consent, a search will not violate the Fourth Amendment if the third party, "reasonably appeared to the police to possess authority to consent to the search." *United States v. Ojdun*, 915 F.3d 875, 883 (2d Cir. 2019); *see also Rodriguez*, 497 U.S. at 189 (where third party did not have actual authority to consent courts must consider whether police officers reasonably believed that third party had authority to consent).  However, this apparent authority rule applies only to mistakes of fact, not mistakes of law.  *See Moore v. Andreno*, 505 F.3d 203, 209 (2d. Cir. 2007) (citing 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.3(g), at 175 (4th ed. 2004)).

Here, the County, as owner of the searched property, voluntarily consented to the search. *Rodriguez*, 497 U.S. at 181.  To the extent that the County was a "third-party," it was one that had access to the residence and, at the very least, had both a substantial interest in the residence—which it planned to demolish in the near future—and permission to gain access to it.  *See* ECF No. 41 at 20–24 (explaining that under New York Law, County was not required to undertake special proceeding to remove Plaintiffs from the Property).  The County's consent was therefore enough to validate the officers' entry into the Property.  *Snype*, 441 F.3d at 136.

Defendants Buzzetti and Martino are therefore entitled to summary judgment on Plaintiffs' Fourth Amendment warrantless entry claim.

### ii.  Warrantless Arrest

A "warrantless arrest of a person is a species of seizure required by the [Fourth] Amendment to be reasonable."  *Payton v. New York*, 445 U.S. 573, 585 (1980).  "[W]hen an officer has probable cause to believe a person [has] committed even a minor crime in his presence, the balancing of private and public interests is not in doubt.  The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  An arrest may be reasonable under the Fourth Amendment even if not authorized by state law.  *See Moore*, 553 U.S. at 176 ("[W]hile States are free to regulate [warrantless] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections.").

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).  The test is objective and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); *see also Zaniewska v. City of New York*, 569 F. App'x 39, 40 (2d Cir. 2014) (summary order) ("This standard is objective and encompasses 'the totality of the circumstances.'").

The Supreme Court has "rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related'" to it. *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).  That is, the question is "whether probable cause existed to arrest a defendant," not "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest."  *Id.* at 154.  "[W]hether or not

probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the [arresting] officers." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

As explained below, Defendants are entitled to summary judgment on Plaintiffs' warrantless arrest claim because probable cause existed to arrest Plaintiffs for trespass under New York law.[7] Under New York law, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05. "A person 'enters or remains unlawfully' . . . when he is not licensed or privileged to do so." *Id.* § 140.00(5).

Plaintiffs argue that they lawfully occupied the Property on September 2, 2015 and that, even if the foreclosure judgment were valid, they did not receive notice of the County's claim of ownership until after they were removed from the Property. In doing so, they appear to dispute whether they had the "requisite knowledge . . . to be capable of violating the statute." *Zaniewska*, 569 F. App'x at 40. But what matters here is whether under the totality of the circumstances, it was reasonable for Defendants to believe that Plaintiffs did not have permission to be where they were before they arrested them for trespass. *See Mitchell v. City of New York*, 841 F.3d 72, 78 (2d Cir. 2016).

Here, a state court had entered a foreclosure judgment, which resulted in the County taking ownership of the Property. Defendant Maggs informed Defendant Buzzetti that City employees had permission to enter the Property and that anyone found on the Property when they did so should be charged with trespassing. In other words, Defendants Buzzetti and Martino understood that the County owned the Property and that no individuals were authorized to enter or remain on

---

[7] This is true even if Plaintiff Murphy was ultimately charged with prohibited occupancy under Section 107.4 of the New York State Property Maintenance Code, under which "[n]o person shall occupy a placarded premises." *See Jaegly*, 439 F.3d at 153.

the Property.  Under these circumstances, in which the owner of the Property informed Defendants Buzzetti and Martino that any individuals found on the Property were there without permission, it was reasonable for Defendants to believe that Plaintiffs did not have permission to be on the Property, and therefore, that they had violated Penal Law § 140.05.  *See Mitchell*, 841 F.3d at 78.

Because Defendants Buzzetti and Martino had probable cause to believe that Plaintiffs were trespassing under Penal Law § 140.05, they are entitled to summary judgment on Plaintiffs' warrantless arrest claim.  Defendants' Buzzetti and Martino's motion for summary judgment is therefore granted as to Plaintiffs' warrantless arrest claim.

### iii.  Warrantless Seizure of Personal Property

Under the Fourth Amendment, "a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Generally, "absent an 'extraordinary situation' a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified."  *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 n.12 (1983).  Therefore, "in the 'ordinary case,' seizures of personal property are 'unreasonable within the meaning for the Fourth Amendment' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after a finding of probable cause."  *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

The "ultimate standard" of the Fourth Amendment is reasonableness.  *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992).  "[W]hether a particular seizure violates the Fourth Amendment therefore typically depends on an analysis that reflects a "careful balancing of governmental and private interests."  *Id.*  There are certain, recognized exceptions under which a warrantless seizure

will be considered "reasonable." *See McArthur*, 531 U.S. at 330. A warrantless seizure must satisfy one of those exceptions to be valid. *Dempsey v. City of Rochester*, No. 19-CV-6780, 2020 WL 7047493, at *4 (W.D.N.Y. Nov. 30, 2020) (quoting *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015)).

Defendants Buzzetti and Martino make little effort to demonstrate how the seizure of Plaintiffs' personal property satisfied any of the exceptions to the warrant requirement. They argue that they properly seized Plaintiffs' property because "Defendants['] actions were necessary and reasonable under the Fourth Amendment"; "the governmental interests" keeping citizens safe "strongly outweigh" Plaintiffs' privacy interests; and, it appears, that "special law enforcement needs and diminished expectations of privacy" rendered the warrantless seizure here reasonable. ECF No. 132-2 at 14–15. These justifications fall short.

To start, Defendants Buzzetti and Martino's assertion that exigent circumstances justified the seizure is belied by their reliance on the fact that the Property had been deemed unsafe for human habitation in 2011, over four years before the seizure at issue here. This lapse in time undermines Defendants Buzzetti and Martino's assertion that the Property posed such a danger at the time of the seizure that law enforcement agents were confronted by an "urgent need" to take action. *See Dempsey*, 2020 WL 7047493, at *10. For the same reason, Defendants have failed to establish that special needs made the warrant requirement "impracticable." *Perkowski v. Town of Brookhaven*, No. CV 18-5480, 2021 WL 4408047, at *6 n.4 (E.D.N.Y. Sept. 27, 2021) (citing *City of Los Angeles Calif. v. Patel*, 576 U.S. 409, 420 (2015)). Moreover, Plaintiffs sharply dispute Defendants' characterization of the Property as unfit for human occupancy, unsafe, and dangerous to the public. *See e.g.*, ECF No. 143-4 ¶ 28. Accordingly, the Court cannot conclude as a matter of law that exigent circumstances justified the warrantless seizure of Plaintiffs' personal property.

To the extent that Defendants argue that the need to protect Plaintiffs themselves from the dangers of the Property justified the warrantless seizure, the site-entry agreement undermines this assertion too. That agreement imposed minimal conditions, permitting Plaintiffs to enter the Property to remove their personal items during daylight hours from October 26, 2015 through November 2, 2015. ECF No. 133-7 at 63–64. The written agreement did not require that members of the police department, fire department, or code enforcement, for example, accompanied Plaintiffs to the Property, suggesting minimal concerns about safety, despite the 2011 placarding. All in all, Defendants have failed to demonstrate that these safety concerns gave rise to the kind of special law enforcement needs or exigent circumstances that would justify the September 2015 seizure of Plaintiffs' personal property without a warrant. *See Perkowski*, 2021 WL 4408047, at *6 n.4; *Dempsey*, 2020 WL 7047493, at *10. Defendants are therefore not entitled to summary judgment on the grounds that the warrantless seizure of Plaintiffs' personal property was reasonable under the circumstances.

Defendant Martino also argues that he is protected by qualified immunity on this claim. "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court "must look to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596–97.

"Clearly established" means that, at the time of the official's conduct, "the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is

unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *District of Columba v. Wesby*, 582 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* (citation and quotations omitted). "It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

Before a court can determine if the relevant law was clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  *Wilson v. Layne*, 526 U.S. 603, 6158 (1999).  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  *al-Kidd*, 563 U.S. at 742.  That is, "the clearly established law must be 'particularized' to the facts of the case."  *White v. Pauly*, 580 U.S. 73, 79 (2017).  While courts "do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S at 741).

"[B]ecause qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings so that the trial court can determine which claims, if any, may be disposed of by summary judgment, or, at least, which facts material to the qualified immunity defense must be presented to the jury to determine its applicability once the case has gone to trial."  *Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995).  Courts in this Circuit have frequently denied motions

for summary judgment raising a qualified immunity defense where defendants have failed to adequately develop the defense by failing to, for example, "specifically referenc[e] the evidence . . . pertaining to each qualified immunity-claimant's conduct" and provide "legal argument explaining why that conduct entitles that Defendant to qualified immunity as a matter of law at this stage of the proceeding." *Field Day, LLC v. Cnty. of Suffolk*, 799 F. Supp. 2d 205, 214 (E.D.N.Y. 2011); *see e.g.*, *Solely v. Cnty. of Nassau*, No. 18-CV-377, 2024 WL 1494383, at *16 (denying qualified immunity defense at summary judgment where defendants did not address specific claims in their briefing on qualified immunity); *Crawford v. Coughlin*, No. 94-CV-494, 1996 WL 227864, at *4 (W.D.N.Y. Apr. 26, 1996) (denying summary judgment where defendants provided only cursory analysis of qualified immunity).

Defendant Martino has failed to adequately develop or prove a qualified immunity defense from Plaintiffs' remaining Fourth Amendment claim. He simply asserts that he followed standard procedures that include "the removal and arrest of unauthorized individuals" and that no "clearly established law . . . prohibit[s] local law enforcement from arresting and charging individuals who have trespassed upon County[-]owned property." ECF No. 132-9 at 22; *see also* ECF No. 149-2 at 16 (repeating same argument in reply). But, to the extent that this argument supports a qualified immunity defense, it speaks only to immunity from Plaintiffs' Fourth Amendment warrantless entry and arrest claims. "[N]owhere in [his] motion or reply [does] Defendant[] offer argument for why [he is] entitled to qualified immunity from" Plaintiffs' Fourth Amendment seizure of property claim. *Solely*, 2024 WL 1494383, at *16. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment on Plaintiffs' remaining Fourth Amendment claim on qualified immunity grounds.

Defendant Martino may, however, pursue a qualified immunity defense should this matter proceed to trial.  *See McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997); *Colon v. City of New York*, No. 16-CV-4540, 2023 WL 6497650, at *5 (S.D.N.Y. Oct. 5, 2023).

Because Defendant Martino has failed to demonstrate that no genuine dispute of material fact exists as to Plaintiffs' remaining Fourth Amendment claim or that he is entitled to qualified immunity, his motion for summary judgment on this claim is denied.

### e.  Fourteenth Amendment Due Process Claims: Personal Property[8]

Defendants Buzzetti and Martino assert that Plaintiffs received both predeprivation notice and opportunity to be heard in the form of numerous notices to remedy the alleged building code violations and the tax foreclosure proceedings as well as a postdeprivation remedy in the form of the site entry agreement.  Plaintiffs argue that they were entitled to, and did not receive, predeprivation notice and opportunity to be heard because Defendants proceeded *ex parte* "to insure that [they] would not receive any notice or opportunity to be heard."  ECF No. 143-1 at 19.

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process."  *Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 961 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  Here, Defendants appear to concede that Plaintiffs had a property interest in the seized personal items.  *See* ECF No. 132-9 at 16–17 (addressing only whether Plaintiffs received adequate process).  The Court therefore concludes that Plaintiffs experienced a deprivation of a protected property interest for the purposes of the Fourteenth Amendment.  *See Fuentes v. Shevin*,

---

[8] To the extent that Plaintiffs' substantive due process claim arises out of the seizure of their personal property, that claim is "covered by" their Fourth Amendment claim, and substantive due process analysis is therefore inappropriate. *See Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)).  Defendants are therefore entitled to summary judgment with respect to Plaintiffs' substantive due process claim arising out of the seizure of their personal property.

407 U.S. 67, 85 (1972) ("But it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment.").

At the core of procedural due process is notice and the opportunity to be heard. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Notice is integral to a party's due process rights under the Fourteenth Amendment because the "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest". *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Although due process does not require actual notice before the government may extinguish a person's property interest, it does require "the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane*, 339 U.S. at 314, 70 S. Ct. 652). Moreover, the Constitution ordinarily requires "some kind of a hearing *before* the State deprives a person of liberty or property." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 115 (2d Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (internal quotation marks omitted). Nevertheless, due process is "flexible" and "calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 417, 481 (1972). The three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—balancing the private interest, risk of erroneous deprivation, and public interest—"provides guidance in determining whether to tolerate an exception to the rule requiring predeprivation notice and hearing." *Nnebe v. Daus*, 664 F.3d 147, 158 (2d Cir. 2001) (internal quotation marks and citations omitted).

"[I]n evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on

random, unauthorized acts by state employees." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides a meaningful postdeprivation remedy." *Hellenic American*, 101 F.3d at 880 (citing *Hudson v. Palmer*, 468 U.S. 517, 531 (1984)). By contrast, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Id.* (citing *Hudson*, 468 U.S. at 532). Additionally, in emergency situations, a state may satisfy the requirements of procedural due process by providing "some meaningful means by which to assess the propriety of the State's action at some time after the initial taking." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)).

Defendant Buzzetti and Martino's position as to within which category the seizure of Plaintiffs' personal property falls is unclear. *Compare* ECF No. 132-9 at 16 (stating that a post-deprivation remedy is adequate when conduct is random and unauthorized), *with id.* at 17 (stating that Defendants' actions were the result of established state and City procedures). Defendant Maggs' position is just as unclear: he simply asserts that he "did not act in an arbitrary or irrational matter" with respect to Plaintiffs' personal property. *See* ECF No. 133-8 at 15. Because, according to Maggs, he "was acting reasonably in his capacity as County Attorney in taking all steps necessary to demolish the Property safely . . . [his] letter cannot establish a procedural due process violation as a matter of law." *Id.* at 15–16. Notably, Maggs does not address whether his involvement in crafting the site-entry agreement could establish a procedural due process violation.

Nor does he argue that the conduct here was "random and unauthorized," such that a post-deprivation remedy was sufficient. *See id.* at 13–14 (discussing "general rule" that prior notice and opportunity to be heard is required without mentioning rule for random and unauthorized conduct).

Here, the Court cannot conclude that, as a matter of law, Plaintiffs received adequate process with respect to the deprivation of their interest in their personal belongings. To the extent that Defendants argue that Plaintiffs received adequate process by virtue of notices related to the condition of the premises and the tax foreclosure proceedings under Article 11 of New York Real Property Tax Law ("RPTL"), they have failed to demonstrate that the notice and opportunity to be heard that these procedures purportedly provided addressed the issue of Plaintiffs' personal property. The state-court foreclosure judgment, for example, says nothing about the status of Plaintiffs' personal belongings, suggesting that the status of those belongings was not at issue. *See* ECF No. 133-7 at 54; *compare id.* (stating that County was entitled to fee simple absolute in parcel of real property), *with In re City of Utica (Suprunchik)*, 169 A.D.3d 179, 181–83 (4th Dep't 2019) (vacating tax foreclosure judgment insofar as it deemed personal property abandoned because court lacked jurisdiction to dispose of personal property under Article 11 of the RPTL). Accordingly, even if Plaintiffs received adequate notice and opportunity to be heard with respect to the real property, Defendants have failed to demonstrate that this reflects adequate process with respect to the personal property within it.

Likewise, Defendants have failed to demonstrate that the prior placarding of the Property provided adequate process with respect to Plaintiffs' personal belongings. Defendants point out that City Code Enforcement placarded the Property as unfit for human habitation in July 2011 and that Plaintiffs were not only aware that they could not remain there, but that they would be arrested

if they did so.  Moreover, notices and orders to remedy violations of the New York State Property Maintenace Code were sent by first-class mail to Plaintiff Murphy in 2011 and 2012.  When Plaintiff allegedly failed to comply with those orders, Defendant Martino filed a misdemeanor information charging him with violations of the New York State Property Maintenance Code (the "Maintenance Code") pursuant to New York Executive Law § 382.

Although Defendants Buzzetti and Martino assert that Plaintiff Murphy had the opportunity to contest the alleged Maintenance Code violations, the only such opportunity apparent from the record is in the form of the criminal proceedings instituted after the Property was placarded and Plaintiffs were prevented from entering the premises.  Defendants provide no evidence that either notices and orders to remedy or the relevant provisions of the Maintenance Code make available "a hearing or other opportunity to be heard in the event that a structure is 'condemned' as unsafe." *Breon v. Perales*, No. 15-CV-6335, 2015 WL 7289399, at *3 (W.D.N.Y. Nov. 16, 2015).

Moreover, even if the Court could conclude that the notices and orders to remedy would constitute adequate notice for procedural due process purposes, genuine factual disputes preclude summary judgment.  Plaintiffs vigorously dispute that the orders to remedy were in effect on September 2, 2015.  *See* ECF No. 143-1 at 11.  As they tell it, "[a]s of mid-August 2015, there were no actual or alleged violations of the Property Maintenance Code or any other provision of the [New York State Uniform Fire Prevention and Building Code]."  *Id.*  If Plaintiffs' version of events is correct, they had neither notice nor opportunity to be heard before Defendants deprived them of their interest in their personal belongings.  As Plaintiffs tell it, the proceedings on which Defendants rely terminated in Plaintiffs' favor, suggesting that the Property was no longer subject to the restrictions placarding imposed.  They would have no reason to know that Defendants could

40

seize their personal property pursuant to no-longer-effective placards. Defendants are therefore not entitled to summary judgment on Plaintiffs' remaining procedural due process claim.

Turning to the question of qualified immunity, as with Plaintiffs' Fourth Amendment warrantless seizure of property claim, no Defendant has demonstrated that he is entitled to qualified immunity at this stage of the proceedings.  As with the Fourth Amendment claim, Defendants qualified immunity arguments speak to different claims.  "[N]owhere in their motion or reply do Defendants offer argument for why they are entitled to qualified immunity from" Plaintiffs' procedural due process claim. *Solely*, 2024 WL 1494383, at *16.  The Court therefore cannot conclude that Defendants are entitled to qualified immunity at this stage of the proceedings.  However, as with Plaintiffs' remaining Fourth Amendment claim, Defendants may pursue this defense at trial.   *See McCardle*, 131 F.3d at 50; *Colon*, 2023 WL 6497650, at *5.

Defendants have failed to establish that they are entitled to summary judgment on Plaintiffs' remaining procedural due process claim or that they are entitled to qualified immunity from it.  This claim may therefore proceed.

## CONCLUSION

For the foregoing reasons, Defendant Buzzetti and Martino's motion for summary judgment, ECF No. 132, is GRANTED with respect to Defendant Buzzetti's claim of absolute immunity, Plaintiffs' Fourth Amendment warrantless entry claim, Fourth Amendment warrantless arrest claim, and Fourteenth Amendment substantive due process claim; and DENIED with respect to Plaintiffs' Fourth Amendment warrantless seizure of property claim and Plaintiffs' Fourteenth Amendment procedural due process claim.  Defendant Maggs' motion for summary judgment, ECF No. 133, is GRANTED with respect to Plaintiffs' Fourth Amendment claims and DENIED with respect to Plaintiffs' Fourteenth Amendment procedural due process claim.

Therefore, Plaintiffs' Fourth Amendment warrantless seizure of property claim may proceed against Defendant Martino and John Does 1–5 and Plaintiffs' Fourteenth Amendment procedural due process claim may proceed against Defendants Maggs, Martino, and John Does 1–5.

Plaintiffs' motion for additional discovery under Rule 56(d), cross-motion for summary judgment, and motion for reconsideration, ECF Nos. 140, 143, are DENIED.

The Clerk of Court is directed to terminate Defendant Buzzetti as defendant in this action.

IT IS SO ORDERED.

Dated: June 28, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York