**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

CHRISTOPHER M. MURPHY and BARBARA M. CAMILLI,

*Plaintiffs*

v. **Case No. 18-CV-6628-FPG-MWP**

BRYAN MAGGS, MATTHEW BUZZETTI, JOSEPH MARTINO and JOHN DOES Nos. ONE to FIVE,

*Defendants*

-------------------------------------------------------------------x

# DECLARATION OF PLAINTIFFS CHRISTOPHER MURPHY AND BARBARA CAMILLI IN SUPPORT OF OBJECTIONS TO NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. § 636(b)(1)(A) AND FED.R.CIV.P. 72(a)

## Preliminary Statement

Pursuant to Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A), plaintiffs submit the following objections to Magistrate Judge Payson's interlocutory Order initially entered on December 6, 2024 (ECF No. 196) and modified on December 9, 2024. (ECF No. 196).

Judge Payson's December 6, 2024 and December 9, 2024 Orders deny our motion for reconsideration of her March 1, 2024 Order (ECF No. 155) pursuant to Fed.R.Civ.P. 54(b). (ECF Nos. 195, 195-1 at 1-2, 108-110).

We note that Judge Payson issued no motion scheduling order in connection with our motion for reconsideration pursuant to Fed.R.Civ.P. 54(b) and no defendant filed or served any response to our motion. (ECF No. 195).

Pursuant to L.R.Civ.P. 72(c), the undersigned certify that the objections to Judge Payson's Order set out herein do not raise new factual or legal arguments.

**Plaintiffs' Motion for Reconsideration is Not Procedurally Deficient**

Judge Payson states: "The motion is both procedurally and substantively deficient. First, the extraordinarily prolix supporting papers exceed by substantial measure the applicable page limit imposed by the local rules. ***See*** Local Rules of Civil Procedure for the Western District of New York." (ECF No. 196 at 1-2).

It's not surprising that Judge Payson fails to cite any specific local rule – because no such rule exists.

There's no page limit on affidavits, declarations or affirmations.

L.R.Civ.P. 7(a)(2)(C) imposes a 25-page limit on memoranda of law.

Neither of our memoranda of law exceeded that page limit.

L.R.Civ.P. 7(a)(3) states, in pertinent part: "An affidavit, declaration, or affformation must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports."

Fed.R.Civ.P. 61 states, in pertinent part, "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Fed.R.Civ.P. 83(a)(2) states: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."

Our declaration does not violate L.R.Civ.P. 7(a)(3).

Assuming, ***arguendo***, without conceding, that our declaration violates L.R.Civ.P. (7)(a)(3), any such violation is not "willful," as defined under Rule 83(a)(2).

Assuming***, arguendo***, without conceding, that our declaration violates L.R.Civ.P. 7(a)(3), any such violation is ***de minimis.***

Judge Payson states: "Plaintiffs have been admonished about oversized filings and attempts to avoid the limitations by splitting their arguments into 'declarations' and 'memoranda,' and indeed a previous filing has been stricken for that reason. (*See* Docket # 155 at 11-12). Plaintiffs' motion for reconsideration reveals the same deficiencies and warrants the same fate." (ECF No. 196 at 2)

Judge Payson refers to our reply declaration on our motion to compel discovery. (ECF No. 126)

Judge Payson alludes to this issue in her December 6, 2024 Decision and Order, but only in passing. (ECF No. 196-2). She does not otherwise respond to our assertions and arguments addressing this issue. (ECF No. 195-1 at 89-97; ECF No. 195-28 at 2-4).

We responded to Judge Payson's decision to strike that paper on the facts and on the law in our papers in support of our motion for reconsideration of her March 1, 2024 Order. (ECF No. 195-1 at at 89-97; ECF No. 195-28 at 2-4).

So too, Judge Payson's comment that our motion for reconsideration "warrants the same" fate as our reply declaration (ECF No. 126) is confusing. Does she mean that our motion for reconsideration (ECF No. 195) is struck or stricken from the docket?

"[T]his would arguably be a different case if the declaration was mostly legal argument, but that's not this case; any legal argument is incidental to the recitation of factual and procedural background relevant to our motion to compel under Rule 37." ***Id.*** at 91.

L.R.Civ.P. 10(b) authorizes the Court to "reject" – in other words, to "strike" – documents that do not comply with L.R.Civ.P 10(a). No claim is made that our papers violate that local rule, nor do they violate it.

L.R.Civ.P. 7(a)(3) states, in pertinent part, "Failure to comply with this requirement may constitute grounds for resolving the motion against the non-comply-

ing party." As noted above, this local rule states: "An affidavit, declaration, or affirmation . . . must contain factual and procedural background relevant to the motion it supports." Clearly, failure to comply with that requirement constitutes grounds for denying a motion -. because it goes to substance.

To be sure, L.R.Civ.P. 7(a)(3) also states "an affidavit, declaration, or affirmation must not contain legal arguments . . . " That prong of the local rule goes to pure form, not substance.

Denying our motion for reconsideration on the ground that it is "procedurally deficient" is [a] "contrary to law" because it violates Fed.R.Civ.P. 83(a)(2); and [b] "clearly erroneous" because our declaration does not violate L.R.Civ.P. 7(a)(3) any other local rule; and [c] manifestly unjust because enormous amount of work.

The same arguments set forth in our earlier papers apply to Judge Payson's finding or conclusion that our motion for reconsideration (ECF Nos. 195, 195-1) is "procedurally deficient."

We are unable to find a single reported case from any circuit that supports Judge Payson's position or ruling on this point.

**<u>It Was Clear Error, an Abuse of Discretion, Contrary to Law and Manifestly Unjust to Strike Our Reply Declaration</u>**

In her March 1, 2024 Order, Judge Payson struck our reply declaration (ECF No. 126). (ECF No. 155 at 11-12).

Plaintiffs responded to Judge Payson's ruling in their declaration. (ECF No. 195-1 at 89-97; ECF No. 195-28 at 1-4).

Although Judge Payson alludes to this portion of her March 1, 2024 Order in her December 6, 2024 Order (ECF No. 196 at 2), she does so only in passing. She does not otherwise address or rule on this matter or issue in her Order denying our motion for reconsideration. (ECF No. 195-1 at 89-97, 108).

A copy of our reply declaration (ECF No. 126) is attached as **Exhibit P** to our declaration in support of our motion for reconsideration. (ECF No. 195). A copy of our memorandum of law (ECF No. 126-7) is annexed as **Exhibit Q**.

A copy of our reply declaration (ECF No. 126) is annexed hereto as **Exhibit A.**

Reconsideration of Judge Payson's ruling to strike our reply declaration was needed both to correct clear error and prevent manifest injustice for the reasons set forth on our motion for reconsideration. (ECF No. 195-1 at 89-97; ECF No. 195-28 at 1-4).

Judge Payson's December 6, 2024 Order (ECF No. 196) striking our reply declaration (ECF No. 126 [**Exhibit A**] is clearly erroneous, an abuse of discretion, contrary to law and manifestly unjust for the same reasons set forth above.

## <u>Judge Payson's March 1, 2024 Order</u>

In her March 1, 2024 Order, Judge Payson relieves defendants of the obligation to respond to 181 of our 246 discovery requests, stating:

"A party's waiver of [his] objections does not otherwise excuse this Court from its obligation to manage its discovery in this case, . . . including limiting its scope as appropriate. Consistent with its responsibility to manage discovery, which in this case has included extensive demands, this Court has reviewed the disputed discovery demands and exercises its discretion to relieve Responding Defendants of the burden of responding to the vast majority of the disputed requests, which this Court finds to be irrelevant, overbroad, duplicative or otherwise adequately answered." (ECF No. 155 at 16).

On our motion for reconsideration of this Order, we argued that it was clearly erroneous and/or manifestly unjust to relieve defendants of their lawful obligation to respond to the 108 of our 246 discovery requests identified at ECF No. 195-1 at 34-42, 56, 58-65, 106-107.

**Judge Payson's December 6, 2024 Order**

In her December 6, 2024 Order, Judge Payson devotes only a single paragraph to what she refers to as the "substantive deficiency" of our motion for reconsideration. (ECF No. 196 at 1-3, 4-5).

She states: "In the main, plaintiffs repeat their contention, made in support of their motion that resulted in the determination which they request this court to reconsider, that discovery related to the foreclosure proceedings and Maggs's conduct for a period of years preceding the foreclosure is relevant to the claims . . . No reasons have been advanced that demonstrate my disagreement with plaintiffs on that proposition (***See*** Docket # 155 at 12-13 & n. 10) is erroneous or unjust. As originally determined by Judge Geraci, the claims permitted to proceed concerned the warrantless search of 757 Linden Place, the warrantless arrest of plaintiffs, and the subsequent loss of their personal property from the residence, as well as issues of adequate notice. (Docket # 41). The subsequent narrowing of the cases to Fourth and Fourteenth Amendment claims related to the deprivation of plaintiffs' personal property (Docket # 188; see also discussion ***infra***) only underscores the lack of relevance of the challenged claims." (ECF No. 196 at 4-5).

To review, we included one hundred and eight (108) of our initial two hundred and forty-six (246) September 10, 2020 and October 21, 2020 discovery demands in our motion for reconsideration under Rule 54(b). (ECF No. 195-1 at 34-42, 56, 58-65, 106-107).

Only Interrogatories Nos. 4, 5, 6, 7, 10, 11, 12, 13, 14 (ECF No. 195-1 at 35-37) remotely relate to the "foreclosure proceedings and Maggs's conduct for a period of years preceding the foreclosure."

Only September 10, 2020 Document Requests to Maggs Nos. 9, 12, 25, 26, 27, 31, 32, 36, 37, 38, 39, 40, 43 and 44 (ECF No. 195-1 at 37-42) remotely relate to the "foreclosure proceedings and Maggs's conduct for a period of years preceding the foreclosure."

September 10, 2020 Document Requests to Maggs Nos. 28, 28, 29, 47, 48, 49, 50, 53, 55, 58 and 62 are wholly unrelated to the "foreclosure proceedings and Maggs's conduct for a

period of years preceding the foreclosure."

The same is true of our Second Request for Production of Documents to Maggs Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 20, 21, 22, 23, 24, 25, 26, 28, 30, 31, 34, 35 and 37. (ECF No. 195-1 at 56).

In light of the above, Judge Payson's statement that "In the main, plaintiffs repeat their contention, made in support of their motion that resulted that resulted in the determination which they request this Court to reconsider, that discovery relating to the foreclosure proceedings and Maggs's conduct for a period of years preceding the foreclosure is relevant to the claims" is incorrect and misleading. Only 21 of the 108 discovery requests included in our motion for re-reconsideration remotely match that description.

That's all Judge Payson says about what she refers to as the "substantive deficiency" in our motion for reconsideration. ***Id***. at 1-2. A total of 10 lines in contrast to the 25 lines she devotes to discussing the supposed "procedural deficiencies" in our motion. ***Id.*** at 1-3.

Other than the above, Judge Payson states: "Plaintiffs' motion.. . . does not allege any new law or evidence material to my previous determination. Nor do I find that I misapprehended or misstated any material facts or law in my previous decision, let alone that my determination to sustain defendants' objections to certain of plaintiffs' discovery demands amounted to 'clear error' or 'manifest injustice.'" ***Id***. at 3 (citation omitted).

To be clear, Judge Payson struck 181 of our 221 discovery requests in this case.

She finds "the vast majority of the disputed requests . . . to be irrelevant, overbroad, duplicative or otherwise adequately answered." (ECF No. 155 at 16)

Judge Payson fails to specify which of the 181 discovery requests she chose to relieve these defendants of their obligation to respond to are supposedly irrelevant, overbroad, duplacative or otherwise adequately answered. (ECF No. 195-1 at 88-89, 98-106)

The undisputed record facts show none of the disputed discovery requests are either overbroad, duplicative, or adequately answered. (ECF No. 195-1 at 34, 57, 65-66).

Judge Payson's finding that any of the disputed discovery requests are either overbroad, duplicative or otherwise adequately answered is thus "clearly erroneous" and an

abuse of discretion because it is a clearly erroneous finding of fact or, put differently, based on a clearly erroneous assessment of the record facts and evidence.

Quite apart from the above, defendants had the burden to assert any objections on any of those grounds. They waived any such objections for the reasons set forth above and good cause did not exist to excuse or limit the scope of such waiver. This being the case, Judge Payson's Order is contrary to law.

**Our Motion for Reconsideration is Not Substantively Deficient**

We served 17 interrogatories and 67 document production demands on Maggs on September 10, 2020. We served 51 document production demands on Buzzetti and 52 document production demands on Martino on September 10, 2020. We served an additional 39 document production demands on Maggs on October 21, 2020. In sum, we timely served a total of 246 pretrial paper discovery demands on the three defendants. (ECF No. 105-1 at 1-2, 31).

In her March 1, 2024 Order, Judge Payson directed defendants to file "supplemental responses" to 39 of our 246 discovery demands by March 20, 2024. (ECF No. 155 at 16-20). She relieved them of their obligation to respond to "the vast majority" of our discovery demands – namely, 216 of out of the 246 propounded to the three defendants. (ECF No. 155 at 16-20).

On our motion for reconsideration of Judge Payson's March 1, 2024 Ordet pursuant to Rule 54(b), we argued that it was clear error and manifestly unjust to relieve defendants of their lawful obligation to respond to any of the 108 discovery demands identified in our supporting declaration. (ECF No. 195-1 at 106-107).

Under the current iteration of Rule 26(b)(1), proportionality and relevance are conjoined considerations. In other words, it is necessary to consider all six Rule 26(b)(1) proportionality factors to determine the relevance of *each* particular discovery request. The cases and legal authorities are cited above. (ECF No. 73-5 at 37-52; ECF No. 195-1 at 8-9).

We addressed all six Rule 26(b)(1) proportionality factor and showed all six strongly support us and come down in favor of discoverability. (ECF No. 105-1 at 36-41, 43-44; ECF No. 73-5 at 1-13, 37-52; ECF No. 126 at 1-18; ECF No. 107-1 at 6-9, 33-45; ECF 195-1 at 8-9).

Judge Payson alludes the Rule 26(b)(1) proportionality requirement in her March 1, 2024 Order, but mentions it merely in passing. In other words, while she pays lip service to the proportionality requirement, she makes no effort to actually apply any of the six Rule 26(b)(1) proportionality factors to this case. (ECF No. 155 at 13-21).

Judge Payson also stated: "Whether the judgment was fraudulently obtained (*see* Docket # 105-1 at 17-20) is neither an issue before this Court nor an element of or relevant to the surviving claims." (ECF No. 155 at 13 n. 10). This is clearly erroneous inasmuch as it contrary to the undisputed material record facts. (ECF No. 105-1; ECF No. 126 at 4-18; ECF No. 195-1 at 18-23; ECF No. 195-27 at 10-16).

As the requesting parties, we had the initial burden of showing relevance and proportionality under Rule 26(b)(1) and Fed.R.Evid. 401 as to our remaining claims. We met and satisfied our initial burden. Put another way, each of the one hundred and eight (108) discovery requests identified at ECF No. 195 at 34-65, 106-107 seek information that is clearly relevant to our remaining claims and properly discoverable under Rule 26(b)(1) and Fed.R.Evid. 401. (ECF No. 73-5 at 1-13; 19-52; ECF No. 87-1 at 5-6, 13, 16-19; ECF No. 87-27 at 1-3; ECF No. 105-1 at 11-20, 31-41, 44; ECF No. 107-1 at 6-9; 33-45; ECF No. 122-2 at 4-6; ECF No. 126 at 1-18, 31, 43; ECF No. 126-7 at 2-4; ECF No. 140-1 at 11-12, 18, 24-26, 29; ECF No. 195-1 at 2-65, 73-74; ECF No. 195-27 at 1-26; ECF No. 195-28 at 5-16).

Judge Payson's ruling that the 108 disputed discovery requests seek information, documents and/or tangible things that are irrelevant is contrary to law in that she misinterprets or misapplies the applicable legal standard (which is set forth in the docket entries specified above).

As a matter of law, inasmuch as we met and satisfied our initial burden to demonstrate relevance and proportionality, the burden shifted to defendants to timely assert any objections the might have based on either: [a] lack of relevancy; [b] burden or expense; [c] over-

breadth; [d] duplication or duplicativeness; [el adequately answered already; [f] public availability; [g] availability from some another source; [h] documents already possessed by requesting party; and/or [i] lack of possession, custody or control of requested documents. (ECF No. 73-5 at 14-19, 24-25, 27-28, 35-36, 53-84; ECF No. 85 at 10-12; ECF No. 93-1 at 6-8; ECF No. 93-9 at 1-3; ECF No. 105-1 at ¶¶ 71-77, 133-183; ECF No. 107 at 1-3; ECF No. 107-1 at 1-6, 9-33, 45-46; ECF No. 122; ECF No. 122-2; ECF No. 126 at 1-18, 39-44; ECF No. 126-7 at 1-6; ECF No. 174-1 at 1-45; ECF No. 195 at 65-89).

As a matter of law, any such objections had to be asserted within the 30-day deadline imposed by Rule 33(b)(2) and Rule 34(b)(2)(A).

The deadline to either respond or object to the interrogatories and document production requests served on Maggs, Buzzetti and Martino on September 10, 2020 was October 13, 2020. (ECF No. 105-1 at 2, 5). No extensions of time to respond were requested, consented to or granted. ***Id.*** at 5. The deadline for Maggs to respond or object to the document production requests served on him on October 21, 2020 was November 23, 2020.

Buzzetti and Martino did not serve their responses/objections until September 6, 2021 – almost a full year after the deadline. ***Id***. "At no time have defendants Buzzetti or Martino ever come forward with any valid, credible, plausible or reasonable excuse or explanation or justification for their blatant failure to comply with their lawful discovery obligations under the Federal Rules of Civil Procedure." (ECF No. 105-1 at ¶ 36).

"Purely as a matter of law, Defendants Buzzetti and Martino waived any objecttions they might otherwise have asserted to plaintiffs' September 10, 2020 Rule 34 document requests (**Exhibit H** and **Exhibit I**) by failing to assert them in a timely manner." ***Id***. at ¶ 37; (ECF No. 126 at 41-43; ECF No. 126-7 at 6-9; ECF No. 195-1 at 73-88).

"Based on the unanimous weight of Second Circuit case law and precedent, 'good cause' does not exist to excuse defendants' failure to timely assert any objections they might otherwise have asserted to plaintiffs' document requests." (ECF No. 105-1 at ¶¶ 8-11, 29-70, 227-239; ECF No. 126 at 41-42; ECF No. 126-7 at 6-9; ECF No. 195-1 at 74-89).

Maggs responded to plaintiffs initial September 10 2020 discovery requests on

October 15, 2020. (ECF No. 105-1 at ¶¶ 3-6).

Attorney Sanders objected to all thirty-nine (39) of plaintiffs' second demand for production of documents by way of a letter dated October 29, 2020. ***Id***. at ¶¶ 7, 144-145.

All of defendants' responses and objections to our discovery requests were and are invalid, unacceptable, incomplete and evasive and must be treated as a failure to disclose, answer or respond pursuant to Rule 37(a)(4). As a matter of law, all three defendants waived any objections they might have asserted to any of our discovery requests based on [a] lack of relevancy; [b] burden or expense; [c] overbreadth; [d] duplication or duplicativeness; [el adequately answered already; [f] public availability; [g] availability from some another source; [h] documents already possessed by requesting party; and/or [i] lack of possession, custody or control. As a matter of law, "good cause" did not exist to excuse or limit the scope of such waiver based on well-settled and clearly-controlling Second Circuit case law and precedent. (ECF No. 73-5 at 14-19, 36, 53-84; ECF No. 85 at 10-12; ECF No. 93-1 at 6-8; ECF No. 93-9 at 1-3; ECF No. 105-1 at ¶¶ 71-77, 133-183, 234-249; ECF No. 107 at 1-3; ECF No. 107-1 at 1-6, 9-33, 45-46; ECF No. 122; ECF No. 122-2; ECF No. 126 at 1-18, 31-44; ECF No. 126-7 at 1-9; ECF No. 178-1 at 1-45; ECF No. 178-18 at 8; ECF No. 195 at 65-89, 99-106).

Where a party's response to a document request is based on lack of possession, custody or control, the responding party must timely submit an affidavit or sworn declaration describing with particularity all locations of potentially responsive documents in fact searched by the responding party. Have to describe with reasonable particularity all locations of potentially responsive documents in fact searched.

"The absence of possession, custody and/or control of documents that have been requested pursuant to Fed.R.Civ.P. 34 must be sworn to by the responding party." (ECF No. 126 at 31-39; ECF No. 126-7 at 4; ECF No. 174-1 at 2-43; ECF No. 174-18 at 8; ECF No. 195 at 85).

As a matter of law, this affidavit or sworn declaration had to be served within the 30-day deadline imposed by Rule34(b)(2)(A). (ECF No. 195 at 66). None of the defendants timely served or submitted such an affidavit or sworn declaration by that deadline. (ECF No.

178-1 at 3-14, 16-39, 41-43).

As a matter of law, defendants waived any objections based on alleged lack of possession, custody or control by failing to timely serve the required affidavit or declaration.

As a matter of law, good cause did not exist to excuse such waiver. (ECF No. 73-5 at 14, 52-60, 68-84; ECF No. 105-1 at ¶¶ 29-70 (Buzzetti and Martino), 71-77, 133-143 (Maggs), 240-249 (all three defendants); ECF No. 107 at 1-3l; ECF No. 107-1 at 9-33, 45-47; ECF No. 122-2; ECF No. 126 at 2-4, 9-18, 24-44; ECF No. 126-7 at 4-9; ECF No. 195-1 at 70-89, 99-106).

It was clear error, an abuse of discretion, contrary to law and manifest unjust to allow defendants to submit compliance affidavits more than three years after the deadline imposed by Rule 34(b)(2)(A).

It is contrary to law and a clear abuse of discretion to excuse or limit the scope of any defendants' waiver of any objections to any of our discovery requests because under unanimous Second Circuit case law and precedent, "good cause" did not exist to do so.

Judge Payson's Order is contrary to law because excusing or limiting the scope of any of the defendants' waiver of any and all objections to any of the 108 discovery demands included in our motion for reconsideration was based on the application of the incorrect legal standard to the uncontroverted and/or incontrovertible material record facts. Put differently. Judge Payson failed to apply or misapplied the relevant statutes, case law and rules of procedure, which are set forth in our papers. (ECF No. 73-5 at 14-19, 24-25, 27-28, 35-36, 53-84; ECF No. 85 at 10-12; ECF No. 93-1 at 6-8; ECF No. 93-9 at 1-3; ECF No. 105-1 at ¶¶ 71-77, 133-183; ECF No. 107 at 1-3; ECF No. 107-1 at 1-6, 9-33, 45-46; ECF No. 122; ECF No. 122-2; ECF No. 126 at 1-18, 39-44; ECF No. 126-7 at 1-6; ECF No. 178-18 at 11-15; ECF No. 195-28 at 16-19).

Judge Payson states that she excused defendants' waiver of any objections based on her "obligation to manage discovery in this case, . . . including limiting its scope as appropriate." (ECF No. 155 at 16)(citing ***Holloway v. Dollar Tree Distrib., Inc***., 2015 WL 3606326, at * 2 [D.Conn. June 8, 2015]).

That's the only case she cites. No reported district court or Court of Appeals case in the Second Circuit lends even colorable or arguable support to Judge Payson's excusing of any defendant's waiver of any objections. Her ruling is contrary to well-settled, clearly-controlling Second Circuit case law and precedent. The material record facts are uncontroverted and/or incontrovertible. Judge Payson applied an incorrect legal standard to those facts and her Order must thus be reviewed ***de novo***, rather than under the more deferential "clearly erroneous" standard of review.

Judge Payson's March 1, 2024 Order is contrary to law and an abuse of discretion in that it violates the mandate of Fed.R.Civ.P. 1 which requires that the Federal Rules of Civil Procedure be "construed and administered to secure the just, speedy and inexpensive determination of every action." ***See Lee v. Max Int'l, LLC***, 638 F.3d 1318, 1321-1322 (10th Cir. 2011)(Gorsuch, J.)

Excusing defendants' waiver of objections was also manifestly unjust to us for a number of reasons. It unfairly and improperly delayed the resolution of our case for more than three years. It imposed an enormous, unfair and improper burden on us by forcing us to assemble and file motions we should not justly or properly been forced to make.

## <u>Summary of the Above</u>

The material record facts are uncontroverted and/or incontrovertible – and documentary, rather than testimonial, in nature.

Each of the 108 discovery requests identified in ECF No. 195-1 at 34-42, 56, 58-65, 106-107 seeks information, documents and/or tangible things that are relevant and properly discoverable under Rule 26(b)(1) and Fed.R.Evid. 401.

Judge Payson applied the wrong legal standard relating to relevance. She misinterpreted or misapplied statutory law, case law and Rule 26(b)(1) and Fed.R.Evid. 401.

Relevance is a mixed question of law and fact. Judge Payson applied an incorrect legal standard to the uncontroverted and/or incontrovertible material facts of record. It

is thus contrary to law.

In light of the above, Judge Payson's March 1, 2024 Order loses the protection of the deferential "clearly erroneous" standard of review under Rule 72(a). As a matter of law, her Order must be reviewed ***de novo***.

Moreover, it was contrary to law and manifestly unjust not to specify which of the disputed requests were supposedly irrelevant, which ones were supposedly overbroad, which ones are supposedly duplicative and/or which ones are supposedly adequately answered. (ECF No. 195-1 at 88, 98-106; ECF No. 195-28 at 16-19).

"This would . . . be a different case if the Court had explained its reasons for ruling against us in a way that enabled us to understand and evaluate why and how it reached its decisions and conclusions. Our review of the reported cases in this Circuit (and other circuits) shows this Court's March 1, 2024 Decision and Order is clearly an outlier in this regard. It is not what courts do – and it is a conspicuous deviation or departure from the norm." (ECF No. 195-1 at 98).

"For example, the Court's March 1, 2024 Order states: '[a] party's waiver of [his] objections does not otherwise excuse this Court from its obligation to manage discovery in this case, . . including limiting its scope as appropriate. Consistent with its responsibility to manage discovery, which in this case has included extensive demands, this Court exercises its discreation to relieve Responding Defendants of the burden of responding to the vast majority of the disputed requests, which this Court finds to be irrelevant, overbroad, duplicative or otherwise adequately answered.' (ECF No. 155 at 16)." (ECF No. 195-1 at 98-99).

"Review of the reported cases clearly shows this is not the way courts do things. Courts in this Circuit invariably explain their reasons for disallowing ***each*** particular discovery request (or category thereof) they decide to disallow." ***Id.*** at 99 (emphasis in original).

"[T]his would be a decidedly different case if, upon close, careful, informed and thoughtful scrutiny and examination, it turned out that 'the vast majority' of the information, documents and/or tangible things we sought in the discovery requests the Court relieved defendants of the obligation of responding to were in fact 'irrelevant, overbroad, duplicative, or

otherwise adequately answered.'" ***Id.***

"But that's not the case – especially as to those portions of the Court's March 1, 2024 Decision and Order included in the present motion for reconsideration under Rule 54(b). The overwhelming majority of the discovery requests this Court disallowed are clearly relevant to our remaining claims under Rule 26(b)(1) – and are neither overbroad, duplicative, nor otherwise adequately answered." ***Id***.

"We respectfully suggest that disallowing one hundred and eighty-two (182) of our two hundred and forty-six (246) discovery requests because 'this Court finds them to be irrelevant, overbroad, duplicative, or otherwise adequately answered' – with no explanation other than it is 'in the exercise of this Court's discretion" and pursuant to 'this Court's obligation to manage discovery in this case . . . including limiting its scope as appropriate' – is both legal error and manifestly unjust to us." ***Id.*** at 100.

Judge Payson "provides no additional or further explanation, guidance, support or justification for a ruling that is so damaging and prejudicial to us and such an enormously valuable gift to the opposing side." ***Id.***

"Based on everything before us, . . . it is logical to infer that if the 'vast majority' of our discovery requests were in fact 'irrelevant, overbroad, duplicative, or otherwise adequately answered, [Judge Payson] would have affirmatively and explicitly discussed why this is so." ***Id***. at 101.

"Explaining a court's reasons for disallowing each discovery request (or category thereof) it decides to disallow makes it easier for the party adversely affected thereby to understand the court's reasons for doing so and to challenge its decision if the party believes there are valid grounds to do so." ***Id***. at 101-102.

That's not what Judge Payson did in her March 1, 2024 Order. ***Id***. at 102.

"This saddled us with an onerous task and burden. We had to go through ***each*** of the one hundred and eighty-two (182) disputed discovery requests [Judge Payson] relieved defendants of their obligation to respond to – in order to show they are relevant and neither 'overbroad, duplicative, nor otherwise adequately answered.' As even a cursory look at our

volumjnous papers in support of the instant motion will readily attest, this turned out to be an inordinate amount of work." ***Id***.

"This was a burden we should not justly or properly have been forced to bear to get the discovery we are clearly entitled to as a matter of law." ***Id***.

***See also*** ECF No. 195-28 at 16-19.

"We need the requested information, documents and tangible things to prepare our remaining claims for trial. In the words of the Supreme Court, preventing us from obtaining it turns trial in this case largely into 'a game of blind man's bluff.' Obviously, this is not only extremely prejudicial to us, but enormously helpful and advantageous to the opposing side." ***Id***. at 102-103.

"'For all practical intents and purposes, there has been no actual or meaningful discovery in this case – at least for plaintiffs. Defendants, on the other hand, got full discovery from plaintiffs. (ECF No. 140-1 at 54)." (ECF No. 178-1 at 29-30).

"Plaintiffs responded fully, non-evasively and in good faith to every interrogatory question and every document production request propounded to them by every defendant. Murphy answered every deposition question put to him by every lawyer fully, non-evasively and in good faith." (ECF No. 178-1 at 30).

Judge Payson's "March 1, 2024 Decision and Order is obviously intended to help and protect these defendants – and, far more important for purposes of the instant motion, [she] clearly disregarded both uncontroverted and/or incontrovertible material record facts and clearly applicable legal standards to accomplish this objective." (ECF No. 195-1 at 103).

Each of the 108 discovery demands included in our motion for reconsideration seeks information, documents and tangible things relevant to our surviving claims under Rule 26(b)(1) and Fed.R.Evid. 401. Judge Geraci's Decision (ECF No. 188) does not change that or render any of them irrelevant.

Relevancy is a mixed question of law and fact. Judge Payson applied an incorrect legal standard to uncontroverted and/or incontrovertible material record facts regarding the relevance of the disputed discovery requests. Her December 6, 2024 Order must thus be

reviewed ***de novo***, rather than under the more deferential "clearly erroneous" standard of review under Rule 72(a).

Judge Payson's denial of our motion for reconsideration (ECF No. 196 at 13) is contrary to law in that it fails to apply or misapplies relevant statutory law, case law and/or rules of procedure.

Judge Payson's March 1, 2024 Order excusing or limiting the scope of any of the defendants' waiver of objections to any of the 108 discovery requests is contrary to law because it fails to apply or misapplies relevant statutory law, case law and/or rules of procedure. Stated another way, it applies an incorrect legal standard to the uncontroverted and/or incontrovertible material record facts. Her December 6, 2024 Order must thus be reviewed ***de novo***, rather than under the more deferential "clearly erroneous" standard of review.

Judge Payson's March 1, 2024 Order was also manifestly unjust to us for at least the reasons mentioned above. Judge Payson's December 6, 2024 Order denying our motion for reconsideration under Rule 54(b) was thus clearly erroneous.

It is important to bear in mind that the ***Official Committee*** standard for relief under Rule 54(b) is framed in the disjunctive – in other words, either "the need to correct a clear error or to prevent manifest injustice."

In her December 6, 2024 Order, Judge Payson states that she does "not find that I misapprehended or misstated any material facts or law in my previous decision, let alone that my determination amounted to 'clear error' or 'manifest injustice.'" (ECF No. 196 at 3) (citation omitted)

We disagree. Judge Payson abused her discretion by basing her March 1, 2024 Order on a clearly erroneous assessment of the evidence, improperly applying the law and using an incorrect legal standard.

All of the 108 discovery demands at issue are relevant. None of them are either overbroad, duplicative or otherwise adequately answered. Even if any of them were, these defendants waived any objections they might otherwise have asserted and "good cause" does not exist to excuse or limit the scope of such waiver. Judge Payson makes no claim or show-

ing of "good cause." Indeed, she does not even mention those two words.

She refers vaguely to her "obligation to manage discovery in this case, … including limiting its scope as appropriate." (ECF No. 155 at 16)( citing ***Holloway v. Dollar Tree Distrib., Inc***., 2015 WL 3606326, at *2 [D.Conn. June 8, 2015]). We reviewed that case and it not only lends no support to Judge Payson's position; it supports our position.

That's the only case she cites. No reported district court or Court of Appeals case in the Second Circuit lends even colorable or arguable support to Judge Payson's excusing of any defendant's waiver of any objections. Her ruling is contrary to well-settled, clearly-controlling Second Circuit case law and precedent. The material record facts are uncontroverted and/or incontrovertible. Judge Payson applied an incorrect legal standard to those facts and her Order must thus be reviewed ***de novo***, rather than under the more deferential "clearly erroneous" standard of review.

## Plaintiffs' Motion for Discovery Sanctions

In Judge Payson's December 6, 2024 Order, she denies plaintiffs' motion for sanctions against defendants (Docket ## 174, 178). (ECF No. 196 at 13). ECF Nos. 174 and 178 was our motion for sanctions under Rule 37[b][2][A] and Rule 37[c][1] relating to the "supplemental responses" served by defendants pursuant to the direction to do so in her March 1, 2024 Order. (ECF Nos. 174-1 at 43; 178-1 at 43).

In her December 6, 2024 Order, Judge Payson devotes six (6) pages to her discussion of our motion for sanctions under Rule 37[b][2][A] and Rule 37[c][1]. (ECF No. 196 at 4-10). As noted above, that's the motion Judge Payson denied in her December 6, 2024 Order. (ECF No. 196 at 13).

In our motion to compel, we requested sanctions against defendants and/or their attorneys pursuant to Rule 26(g)(1). (ECF Nos. 105, 105-1 at 44-48). Judge Payson denied our motion for sanctions pursuant to Rule 26(g)(1) in her March 1, 2024 Order. (ECF No. 155 at 21).

That is the Order we requested reconsideration pursuant to Rule 54(b) in our September 4, 2024 motion. (ECF No. 195-1 at 70-72, 108).

In our motion for reconsideration of Judge Payson's March 1, 2024 Order (ECF No. 195-1 at 70-72, 108), we argued that it was both clear error and manifestly unjust to deny our motion for sanctions pursuant to Rule 26(g)(1). Judge Payson makes no mention of our motion for sanctions under Rule 26(g)(1) in her Order denying our motion for reconsideration of her March 1, 2024 Order. (ECF No. 196 at 13).

Judge Payson did not rule on our motion for reconsideration of her March 1, 2024 Order denying our motion for sanctions under Rule 26(g)(1) in her December 6, 2024 Order (ECF No. 196).

As noted above, Judge Payson denied our motion for sanctions under Rule 37[b][2][A] and Rule 37[c][1]. (ECF No. 196 at 13). That motion had nothing to do with our motion for sanctions under Rule 26(g)(1).

Judge Payson stated "I do not find that any of the defendants answered the requests in bad faith." (ECF No. 196 at 4). (Citing ECF No. 155 at 11-20).

It was clearly erroneous, an abuse of discretion, contrary to law and manifestly unjust to deny our motion for sanctions pursuant to Rule 26(g)(1). (ECF Nos. 73-5 at 14-29, 52-84; 87-1 at 9-12; 93-1 at 1-12; 97 at 1-10; 101-1 at 9-10; 105-1 at 5-36, 44-45; 107 at 1-3; 107-1 at 9-33, 45-47; 122-2; 126 at 2-4, 9-18, 28-44; 126-7 at 4-9; 140-1 at 53-55; 140-6 at 11-17; 178-1 at 27-28, 31-32, 35; 195-1 at 67, 70-89, 99-106).

Judge Payson applied the wrong legal standard to material record facts that are uncontroverted and/or incontrovertible. Her ruling must thus be reviewed ***de novo***, rather than under the more deferential "clearly erroneous" standard of review..

The protracted discussion of our motion for sanctions (ECF Nos. 174, 178) in Judge Payson's December 6, 2024 Order denying our motion for reconsideration of her March 1, 2024 Order (ECF No. 196 at 4-10) is irrelevant and extraneous to our motion for reconsideration pursuant to Rule 54(b). (ECF Nos. 105, 105-1 at 44-46; 195, 195-1 at 70-72, 108).

**Martino's Motion for Sanctions Against Camilli**

Judge Payson directed Camilli to reimburse defendants for the costs of a court reporter associated with a deposition conducted on May 17, 2024, (ECF No. 196 at 12-13).

Judge Payson stated:

"Contrary to her assertion that defendants could have and should have avoided incurring the costs associated with her non-appearance because they knew she did not plan to attend, defendants are correct that the prudent, if not required, course was to appear because the Court had not issued an order excusing Camilli from attending the deposition." ECF No. 196 at 12.

"Camilli does explain why she waited until the day before the deposition to advise that she did not have internet service. She indicates that the service was turned off on May 14 (two days before notified counsel and the Court)(***id.*** at 4); she should have been aware prior to that time that non-payment of charges – regardless of the merits of the payment dispute – risked loss of service and should have contacted counsel to make alternate arrangements.. Altough she filed a letter with the Court, she offered no means of communicating with her. (See Docket # 170). As she managed to file a letter request that day, it strains credulity to believe that she could not have communicated with counsel during the three days between the loss of service and her scheduled deposition to make arrangements for appearance by remote means or by personal appearance, particularly since she had access to wi-fi internet service through her local library. (***see id***.). (ECF No. 196 at 12)

"That same day, counsel for defendants responded by filing a letter opposing the request and arranging for the deposition to be held in person in Painted Post (a location approximately half-way between plaintiff's home and counsel's office) (Docket # 171). Camilli did not respond to counsel's letter." (ECF No. 196 at 11).

Judge Payson states: "That morning, counsel for defendants appeared

with a court reporter ***at the location in Painted Post***; Plaintiff Camilli did not appear. (Docket ## 181-1 at ¶ 13; 181-2)." (ECF No. 196 at 12)(emphasis added).

That's wholly untrue.

Gilboy's declaration explicitly states: "Deponent and Attorney Arias appeared for and attended Plaintiff's deposition via remote means. Plaintiff did not appear." (ECF No. 181-1 at ¶ 13).

The deposition transcript states "Held via videoconference." (ECF No. 181-2 at 2).

Neither counsel for defendants nor the court reporter appeared at the location in Painted Post.

In her letter to Judge Geraci dated May 16, 2024, Gilboy states:

> Plaintiff's deposition can be conducted in person at a law office in Painted Post, which is halfway between my office and Plaintiff's home in Bath. I have obtained a conference room at the law firm with plenty of room for her to appear in person. (ECF No. 171).

"I respectfully request that this Court deny Plaintiff's request and direct Plaintiff to appear for her deposition by phone or in person at Painted Post." ***Id.***

Gilboy filed this letter at 3:58 P.M. on May 16.

District Judge Telesca referred this case to Judge Payson to handle discovery and other nondispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A). ECF No. 13. This referral was never vacated pursuant to Fed.R.Civ.P. 72(b)(3). (ECF No. 174-1 at 39).

"We find it both interesting and telling that Gilboy chose to circumvent Judge Payson and go to Judge Geraci with her complaint about Camilli's request to reschedule her continued deposition in this case." (ECF No. 174-1 at 39).

Gilboy recites service on Murphy and Camilli ("via Email and Postal Mail"). (ECF No. 171 at 2; ECF No. 189 at 2)

The emailed copy was served at 8:43 A.M. on May 17 – 2 hours and 17 minutes before the deposition was scheduled to begin.

Gilboy knew Camilli had no internet service. (ECF No. 170; ECF No. 189 at 4).

Gilboy knew Camilli would not get a copy of her letter to Judge Geraci before the deposition was scheduled to begin on May 17.

At 2:30 P.M. on May 16, 2024, Camilli filed and served a letter request to Judge Payson to respectfully request an adjournment of my continued telephone deposition – which was scheduled to commence the following day, May 17, at 11:00 A.M. (ECF No. 170; ECF No. 189 at 1-4).

While not a declaration, I included the declaration that the above was true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746(2).

Camilli explained that we lost both internet and phone service because of a problem with our supplier – Spectrum.

"As of two days ago, we have Internet access and no phone. We can't make or receive any calls by either land line or cell. . . Spectrum cut us off without prior written warning or notice. I have been working to resolve this problem full-time for the last two days, but have not been able to get either Internet or phone service back . . . As of now, Spectrum refuses to re-connect us until we pay a grossly-inflated, unfounded bill for equipment and service we never received. We are clearly in the right in this bothersome dispute, so I am confident that I will be able to get this problem resolved, but not in time to continue my deposition tomorrow." (ECF No. 170)

"Until we get things worked out with Spectrum, the only way we can get Internet access is to walk down to the local public library – which is the closest hot spot. So far, even at the library, we can't make or receive phone calls." (ECF No. 170)

In her declaration, Gilboy asserts "Camilli requested extension of time on May 16, "alleging that her internet was turned off due to inability to pay her Spectrum bill (Docket # 170)." (ECF No. 181-1 at ¶ 9).

Judge Payson stated Camilli "indicates that the service was turned off on May 14 (two days before notified counsel and the Court)(***id.*** at 4); she should have been aware prior to

that time that non-payment of charges – regardless of the merits of the payment dispute – risked risked loss of service and should have contacted counsel to make alternate arrangements.. Al-tough she filed a letter with the Court, she offered no means of communicating with her. (See Docket # 170)." (ECF No. 196 at 12)

Our phone and internet was not shut off for inability to pay our Spectrum bill. (ECF No. 170; ECF No. 172).

In her letter to Judge Payson dated May 30, 2024, Camilli stated: "As you may recall, I wrote to you on May 16, 2024 to respectfully request an extension of time to proceed with my continued deposition in this case. I explained the problems I was having with Spectrum having wrongfully cut off both our phone and Internet service." (ECF No. 172 at 1)

"I have been working on getting this problem resolved every day – and was finally able to get Spectrum to correct its bill and now acknowledge that we owe nothing. I enclose a copy of Spectrum's May 28, 2024 statement confirming that we have a zero balance." ***Id***.

"I will promptly advise the Court as soon as I have a firm answer as to when our phone service will be restored and I will be able to proceed with my continued deposition in this case." ***Id.*** at 2.

In Camilli's letter to Judge Payson dated June 4, 2024, she advised that our inter-net and phone service had been restored by Spectrum. (ECF No. 177). Murphy confirmed this in a letter to Judge Payson dated June 7, 2024. (ECF No. 180).

"Camilli's request to adjourn her continued deposition was reasonable and justi-fied – and due to circumstances beyond her control, including the timing of the problem with Spectrum. We lost our phone and Internet service on May 14th and spent the next two [weeks] trying to get it restored. This was not just the deposition itself, but our cell and landline phone service and Internet access in its entirety. It was a disaster for us and we worked full time to resolve the problem – and promptly advised the Court and counsel as soon as it was resolved. And it was not our fault – a fact which Spectrum ultimately acknowledged by adjusting our bill (which we documented in later correspondence with the Court)." (ECF No. 189 at 3-4).

"As soon as our Internet access and phone service was restored, we immediate-

ly advised the Court and all parties. The record clearly shows that plaintiffs made every possible effort to comply with the Court's Order and their inability to do so was due to circumstances which they could not reasonably foresee and which were beyond their control." ***Id.*** at 5.

"Assuming, ***arguendo,*** without conceding, that Camilli violated the Court's March 1, 2024 Order (ECF No. 155 at 9), her noncompliance was neither willful nor culpable nor the product of bad faith, but rather substantially justified." ***Id***.

"The record clearly shows that both plaintiffs consistently acted in good faith, responsibly and in timely fashion when it comes to their discovery obligations and all other matters related to this action. (ECF No. 178-1 at 32)." ***Id***.

"The information to be provided by Camilli at her continued deposition is of little material relevance in the overall scheme of things and cannot make any dispositive difference in the outcome of this case." ***Id***. at 6.

"The record clearly shows that these defendants and their lawyers – Gilboy in particular – are not interested in the information that might be provided by Camilli in response to the few permissible questions at her continued deposition." ***Id.*** at 7.

"Rather, they're just looking for a gotcha. (ECF No. 173 at 1)." ***Id.***

Judge Payson suggests Camilli "should have been aware of the fact that non-payment of charges . . . risked loss of service." (ECF No. 196 at 12).

That would be true if our service was cut off for failure to pay a valid bill, inasmuch as in such case, loss of service would be predictable.

But that's not this case. We could not reasonably predict that Spectrum would wrongfully cut off our service – because of an accounting error. Moreover, Camilli had a reasonable belief under the circumstances that she should and could have been able to get our internet access and phone service restored by Spectrum in time to proceed with her continued deposition at 11:00 A.M. on May 17. (ECF Nos. 170, 172, 177).

Judge Payson stated "Camilli does not explain why she waited until the day before the deposition to advise that she did not have internet service . . . As she managed to file a letter request that day, it strains credulity to believe that she could not have communicated with

counsel during the three days between the loss of service and her scheduled deposition to make arrangements for appearance by remote means or by personal appearance, particularly since she had access to wi-fi internet service through her local library. (***see id***.). (ECF No. 196 at 12)

Contrary to what Judge Payson says, Camilli did explain why she waited until May 16 to advise of this fact. Camilli had good reason to believe she could get the problem resolved and our phone and internet service restored in time to complete her continued deposition at 11:00 A,M. on May 17. (ECF No. 170; ECF No. 172; ECF No. 177; ECF No. 189 at 1-6)

While Camilli had access to the internet at Dorman Library in Bath, she could not make or receive phone calls there. (ECF No. 170).

It would not have been possible to complete her continued deposition either by telephone or other remote means at the local public library.

Judge Payson stated: "That same day, counsel for defendants responded by filing a letter opposing the request and arranging for the deposition to be held in person in Painted Post (a location approximately half-way between plaintiff's home and counsel's office) (Docket # 171). Camilli did not respond to counsel's letter." (ECF No. 196 at 11).

Judge Payson states: "That morning, counsel for defendants appeared with a court reporter ***at the location in Painted Post***; Plaintiff Camilli did not appear. (Docket ## 181-1 at ¶ 13; 181-2)." (ECF No. 196 at 12).

In her letter to Judge Geraci dated May 16, 2024, Gilboy states:

> Plaintiff's deposition can be conducted in person at a law office in Painted Post, which is halfway between my office and Plaintiff's home in Bath. I have obtained a conference room at the law firm with plenty of room for her to appear in person. (ECF No. 171).

In her declaration, Gilboy states "Deponent filed a letter that same day opposing Plaintiff's request. (Docket # 171). In the letter, Deponent notified Plaintiff and the Court that I had office space rented in Painted Post and was agreeable to hold Plaintiff's depo-

sition in person to avoid any technological issues (*see* Docket # 171)." (ECF No. 181-1 at ¶ 10).

"Deponent and Attorney Arias appeared for and attended Plaintiff's deposition by remote means. Plaintiff did not appear." ***Id.*** at ¶ 13.

"Gilboy sent a letter to District Judge Geraci upon receipt of [Camilli's] May 16th letter to Judge Payson. She talked about arrangements she made with a law office in Painted Post and extended Camilli an invitation to appear in person at the law firm for her (Camilli's) deposition, but she (Gilboy) does not identify the name or address of this mystery law firm." (ECF No. 189 at 4).

Judge Payson states: "Contrary to (Camilli's) assertion that defendants could and should have avoided incurring the costs associated with her non-appearance because they knew she did not plan to attend, defendants are correct that the prudent, if not required, course was to appear because the Court had not issued an order excusing Camilli from attending the deposition." (ECF No. 196 at 12).

This begs the question: How could Camilli appear for this deposition given that Gilboy did not inform her of either the name or address of the mystery law firm somewhere in Painted Post? Did Judge Payson really expect Camilli to drive around Painted Post looking for this law firm? Does Judge Payson say that it was Camilli's obligation to run after Gilboy to get the name and address of this law firm?

Gilboy knew Camilli would not get a copy of her (Gilboy's) May 16 letter to Judge Geraci before the deposition was scheduled to begin at 11:00 A.M. on May 17. (ECF No. 189 at 2, 4).

We say Gilboy made no arrangements with any law firm in Painted Post for Camilli's continued deposition on May 17. We say Gilboy's claim that she made any such arrangements is just another of Gilboy's many lies. We invite Gilboy to respond by informing both us and this Court of the name and address of this mystery law firm and also by coming forward with credible documentation by an attorney associated with that law firm.

"Gilboy's May 16th letter to Judge Geraci recites copies were sent to us via

electronic mail and first-class mail the same day – for a deposition to be conducted at an unknown location in another town at 11:00 A.M. the very next morning. Clearly, the copy sent via USPS first-class mail would not be delivered in time. Nor did we receive the emailed copy in time to act on it for reasons already mentioned which should be readily apparent." (ECF No. 189 at 4; ECF No. 170).

"Camilli's request to adjourn her continued deposition was reasonable and justified – and due to circumstances beyond her control, including the timing of the problem with Spectrum. We lost our phone and Internet service on May 14 and spent the next two days trying to get it restored. This was not just the deposition itself, but our cell and landline phone service in its entirety. It was a disaster for us and we worked full time to resolve the problem – and promptly advised the Court and counsel as soon as it was resolved. And it was not our fault – a fact which Spectrum ultimately acknowledged by adjusting our bill (which we documented in later correspondence with the Court)." (ECF No. 189 at 3-4).

"Twenty-four hours was more than enough time to cancel and reschedule Camilli's continued deposition – which was to be conducted by telephone. None of the participants had to leave their homes or offices . . . [I]t would have cost these lawyers or their clients nothing to cancel this deposition – which, in the event, was not conducted in person at an undisclosed location in Painted Post, but by telephone or some other remote means." ***Id***. at 4.

"Any expenses incurred by defendants could easily have been avoided and should be regarded as self-inflicted injury." ***Id.*** at 4-5.

"Gilboy also knew we had neither phone nor Internet. The lack of phone service was easy to verify – simply by calling our cell and landline numbers. To hook up with the Internet, we had to walk a mile to the public library – until we found a closer Wi Fi Hotspot at a rock outside nearby Serv-U Credit Union (about a quarter mile away)." ***Id.*** at 4.

"Assuming, ***arguendo,*** without conceding, that Camilli violated the Court's March 1, 2024 Order (ECF No. 155 at 9), her noncompliance was neither willful nor culpable nor the product of bad faith, but rather substantially justified." ***Id***. at 5.

"As soon as our Internet access and phone service was restored, we immediately

advised the Court and all parties. The record clearly shows that plaintiffs made every possible effort to comply with the Court's Order and their inability to do so was due to circumstances they could not reasonably foresee and were beyond their control." ***Id***.

"The record clearly shows that both plaintiffs consistently acted in good faith, responsibly and in timely fashion when it comes to their discovery obligations and all other matters related to this action. (ECF No. 178-1 at 32)." ***Id.***

"Defendants make no claim or showing of prejudice, nor can they reasonably claim prejudice." ***Id***. at 6.

"'In a declaration which she signed and declared under penalty of perjury to be true and correct pursuant to 28 U.S.C. 1746, Gilboy stated: "Deponent and Co-Counsel Kayla Arias, Esq., conducted the depositions of Plaintiffs on November 1, 2022. A copy of Plaintiffs' deposition transcripts are annexed hereto as Exhibit A.' (ECF No. 132 at ¶ 16)." (ECF No. 174-1 at 40).

"Review of the copies of plaintiffs' deposition transcripts puts the lie to Gilboy's sworn declaration. The depositions of both Murphy and Camilli were conducted only by Jeremy Hourihan and Kayla Arias. (ECF No. 132-1 at 4 [Murphy] and ECF 132-1 at 67 [Camilli]." (ECF No. 174-1 at 40).

"The record clearly shows that Gilboy did not file a notice of appearance in this case until September 18, 2023. (ECF No. 127)." ***Id***.

"In letters to Camilli, Gilboy falsely stated that Camilli's continued 'deposition must occur on or before March 20, 2024. (ECF No. 161-1 at 2; ECF No. 161-2 at 3)." (ECF No. 174-1 at 40).

"In a declaration sworn under penalty of perjury to be true and correct, Gilboy falsely declared: '[T]his Court directed the moving Defendants and Plaintiff Camilli to confer to agree on a date, time and place for the continued deposition of Plaintiff Barbara Camilli, to be held on or before March 20, 2024 (Docket # 155 p. 9).' (ECF No. 161 at ¶ 4)." (ECF No. 174-1 at 40).

Judge Payson's Order states: "The parties are directed to promptly confer to agree on a date, time, and place for the continued deposition, and, on before March 20, 2024, Moving Defendants shall provide the Court in writing with the date and time of Camilli's deposition." (ECF No. 155 at 9).

"Gilboy deliberately misstated and misrepresented the clear and unambiguous wording and direction in Judge Payson's Order. (ECF No. 155 at 9)." (ECF No. 174-1 at 41).

Gilboy's lies violate New York Judiciary Law § 487. (ECF No. 87-27 at 1).

(See also ECF No. 167; 167-3; 167-8; 167-11; 167-12)

"In its March 1, 2024 Order, this Court explicitly limited the permissible questions askable at Camilli's *continued* deposition to four narrow subjects: (1) 'Whether [Camilli] went inside the real property tax office;" (2) "what the ramrod looked like;" (3) "which county officials she spoke with about getting additional time to remove items from the house;: and (4) "the estimated value of belongings left inside the house.' (ECF No. 155 at 8)." (ECF No. 189 at 5).

"Also to inquire 'about the answers Camilli changed or retracted in her errata sheet.' ***Id***. at 9. A copy of Camilli's errata sheet is attached hereto as **Exhibit B**." ***Id***. at 5.

"In the Court's March 1, 2024 Decision and Order, the Court stated: 'To the extent that defendants' counsel believes that there are other questions that they put to Camilli that she improperly declined or refused to answer, which they wish to pursue at her continued deposition, they must identify those questions in a letter to this Court with copies to plaintiffs by no later than **March 13, 2024.**' (ECF No. 155 at 9 n. 7)." ***Id***.

"No response was forthcoming from counsel." ***Id***.

"The record clearly shows that both plaintiffs consistently acted in good faith, responsibly and in timely fashion when it comes to their discovery obligations and all other matters related to this action. (ECF No. 178-1 at 32)." ***Id.***

"Defendants make no claim or showing of prejudice, nor can they reasonably claim prejudice." ***Id***. at 6.

In her December 6, 2024 Order, Judge Payson states: "[D]efendants have sought an order imposing sanctions on plaintiff Camilli for failing to appear at a scheduled deposition. (Docket # 181)." (ECF No. 196 at 1, 13).

ECF No. 181 is defendants' notice of motion. It states: "Relief Requested: An Order pursuant to FRCP 37, (1) to preclude Plaintiff Camilli from offering 'favorable testimony' in support of future motions or at trial; and (2) reimbursements of costs to Defendants associated with Camilli's continued deposition."

ECF No. 181-1 is Gilboy's Supporting Declaration. It states: "Based on the foregoing, Defendants request an Order of the Court (1) to preclude Plaintiff Camilli from offering 'favorable testimony' in support of future motions or at trial and (2) Reimbursement of costs to Defendants associated with Camilli's continued deposition." (ECF No. 181-1 at ¶ 14).

That's the motion we responded to. (ECF No. 189, 189-4 at 1-4).

That's the motion Judge Payson purported to grant. (ECF No. 196 at 1, 10-13).

In a letter to District Judge Geraci dated May 31, 2024, Gilboy stated: "I write this letter in response to Ms. Camilli's request for an adjournment of her deposition . . . At no time did this Court approve an adjournment of Ms. Camilli's deposition before we appeared on Masy 7, 2024. Ms. Camilli's request is now moot." (ECF No. 173).

L.R.Civ.P. 7(a)(1) states, in pertinent part, "A notice of motion is required for all motions, and must state: the relief sought [and] the grounds for the request."

Fed.R.Civ.P. 7(b)(1)(C) states that a motion "must … state with the relief sought."

"This particularity requirement gives notice to the court and the opposing party, providing the opposing party with a meaningful opportunity to respond to the movant's arguments." 2 ***Moore's Federal Practice*** § 7.03[4][a]

Unlike plaintiffs' supposed violation of L.R.Civ.P. 7(a)(3), which is purely a matter of form, L.R.Civ.P. 7(a)(1) is a matter of substance.

In Judge Payson's December 6, 2024 Order, she states: "This Court is hereby rescheduling her deposition to occur in the United States Courthouse, Courtroom 7, 100 State Street, Rochester, New York 14614, on January 17, 2025 at 11:00 a.m. Counsel for Martino

is directed to appear with a court reporter at that time. Should Camilli fail to appear as ordered, Martino may renew his motion, and preclusion sanctions are likely to be imposed at that time." (ECF No. 196 at 13).

This ruling is a contrary to law and abuse of discretion because it is based on an incorrect legal standard and on a clearly erroneous assessment of the facts. It is contrary to law because it fails to apply or misapplies relevant rules of procedure – namely, Fed.R.Civ.P. 7(b)(1)(C) and L.R.Civ.P. 7(a)(1).

## **Summary and Conclusion**

Judge Payson's December 6, 2024 Order denying our Rule 54(b) motion for reconsideration of her March 1, 2024 Order (ECF No. 196 at 3-4, 13) is contrary to law. As a matter of law, it must be reviewed ***de novo***.

Judge Payson's Order is contrary to law, insofar as it relieves defendants of their obligation to respond to ***any*** of the 108 discovery requests included in our motion for reconsideration. (ECF No. 195-1 at 34-42, 56, 58-65, 106-107).

Judge Payson relieved defendants of their obligation to respond to all of them.

Judge Payson spent a page and a half discussing the supposed "procedural deficiency" of our motion for reconsideration. (ECF No. 196 at 1-2).

Judge Payson spent one paragraph discussing what she referred to as the "substantive deficiency" of our motion – in other words, the actual merits of our motion. (ECF No. 196 at 3-4).

Judge Payson devotes six pages discussing a motion for sanctions (ECF Nos. 174, 178) that was not included in our motion for reconsideration. (ECF No. 196 at 4-10, 13).

Judge Payson does not address or discuss the motion for sanctions pursuant to Rule 26(g)(ECF Nos. 105, 105-1 at 44-48). Judge Payson denied that motion in her March 1, 2024 Order. (ECF No. 155 at 21). That is the Order we sought reconsideration of pursuant to Rule 54(b). (ECF No. 195-1 at 70-72, 108). Judge Payson doesn't even mention it in her Or-

der denying our motion for reconsideration. (ECF No. 196). In other words, she spent six pages of her fourteen-page Order discussing a motion we did not make and zero pages discussing the motion we did make.

Judge Payson's Order must be construed as a denial of our motion for sanctions under Rule 26(g)(1). For the reasons set forth above, Judge Payson's Order (ECF No. 196) is contrary to law, an abuse of discretion and clearly erroneous.

Judge Payson's Order (ECF No. 196) does not address or rule on our motion for reconsideration of her March 1, 2024 Order striking our reply declaration (ECF No. 126 [**Exhibit A**])(ECF No. 155 at 11-12)(ECF Nos. 195-1 at 89-97, 108; No. 195-28 at 1-4). Judge Payson's Order thus constitutes a denial of our motion. For the reasons set forth above and in our earlier papers, Judge Payson's Order is contrary to law, an abuse of discretion and clearly erroneous.

For the reasons mentioned above, Judge Payson's Order directing Camilli to reimburse defendants for the costs associated with the deposition conducted on May 17, 2024 (ECF No. 196 at 13) is an abuse of discretion and clearly erroneous.

For the reasons mentioned above, Judge Payson's Order directing Camilli to appear in person at the courthouse on January 17, 2024 to be deposed is contrary to law and an abuse of discretion.

Pursuant to L.R.Civ.P. 72(c), the undersigned certify that the objections to Judge Payson's Order set out herein do not raise new factual or legal arguments.

Pursuant to 28 U.S.C. § 1746(2), the undersigned declare under penalty of perjury that the above is true and correct.

## **Request for Relief**

Based on the foregoing, plaintiffs respectfully request that an Order be made pursuant to Fed.R.Civ.P. 72(a) granting them the following relief:

[a] reversing Judge Payson's Order denying our motion for reconsideration and directing defendants to respond to each of the 108 discovery requests identified in ECF No. 195-1 at 107-108;

[b] reversing Judge Payson's Order striking our reply declaration (ECF No. 126 [**Exhibit A**]) from the docket;

[c] reversing Judge Payson's Order denying our motion for sanctions pursuant to Rule 26(g)(1) and granting that motion;

[d] reversing Judge Payson's Order directing Camilli to pay the costs associated with the deposition conducted on May 17, 2024;

[e] reversing Judge Payson's Order directing Camilli to appear at the courthouse to be deposed on January 17, 2024; and

[f] granting plaintiffs such additional and further relief as is equitable and proper to this Court.

Date: December 20, 2024

Signed and Respectfully Submitted,

s/ *Christopher Murphy*

Christopher M. Murphy

Plaintiff, appearing ***pro se*** at this time

105 Geneva Street, Apt. 237

Bath, New York 14810

Telephone: (607) 664-6817/(607) 438-0717

christophermwmurphy@juno.com

christophermurphy@netzero.com

s/ *Barbara Camilli*

Barbara M. Camilli

Plaintiff, appearing ***pro se*** at this time

105 Geneva Street, Apt. 237

Bath, New York 14810

Telephone: (607) 664-6817/(607) 438-0717