UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

CHRISTOPHER M. MURPHY and
BARBARA CAMILLI,

                     Plaintiffs,

        v.

COUNTY OF CHEMUNG, CITY OF ELMIRA,
BRYAN MAGGS, JOSEPH MARTINO, and
JOHN DOES 1-5,

                Defendants.

───────────────────────────────

**DECISION AND ORDER**

6:18-CV-06628-FPG-CDH

## INTRODUCTION

*Pro se* plaintiffs Christopher Murphy and Barbara Camilli (collectively, "Plaintiffs") commenced this action pursuant to 42 U.S.C. § 1983 against the County of Chemung (the "County"), County Attorney Bryan Maggs, the City of Elmira (the "City"), and City employees Matthew Buzzetti, Joseph Martino, and John Does 1-5. (Dkt. 1). Plaintiffs assert multiple violations of their constitutional rights in connection with their ejectment from 757 Linden Place in the City of Elmira on September 2, 2015. Following the Court's screening of Plaintiffs' complaint pursuant to 28 U.S.C. § 1915(e)(2) and two motions for summary judgment, this case has been narrowed to Plaintiffs' Fourth Amendment warrantless seizure of personal property claim against Martino and John Does 1-5 and Fourteenth Amendment procedural due process claim against Maggs, Martino, and John Does 1-5. (*See* Dkt. 188 at 42).

Presently before the Court are three motions. Martino has filed a renewed motion for sanctions against Camilli based on her failure to attend a Court-ordered deposition on January 17, 2025 (the "January 17th Deposition"). (Dkt. 217). Maggs and Martino (hereinafter, collectively, "Defendants") have moved to quash nine non-party subpoenas served on various City and County officials. (Dkt. 219). Plaintiffs have filed a motion for reconsideration of the Court's January 16, 2025 Decision and Order, which denied Plaintiffs' request to cancel the January 17th Deposition. (Dkt. 226). For the reasons discussed below, Martino's motion for sanctions (Dkt. 217) is granted; Defendants' motion to quash (Dkt. 219) is granted; and Plaintiffs' motion for reconsideration (Dkt. 226) is denied.

## FACTUAL BACKGROUND

Murphy was the owner of 757 Linden Place in the City of Elmira (the "Property"). (Dkt. 1 at 23). In 2012, the County commenced a tax foreclosure proceeding as to the Property, resulting in a judgment by the Chemung County Court on August 11, 2015, awarding possession of the Property to the County. (Dkt. 188 at 4). The County Treasurer then filed and recorded a deed conveying the Property to the County. (Dkt. 132-7 at ¶ 12). Plaintiffs claim they never received a petition or foreclosure notice and dispute the County's legal right to the Property. (*See* Dkt. 188 at 4). After the deed was recorded, Maggs advised the City that the Property was unsafe and dangerous and therefore needed to be prepared for demolition. (*Id.* at 5).

On September 2, 2015, Plaintiffs allege that "a bunch of Elmira Police officers descended on [the Property]" and "started busting down the (new) front door of

[Plaintiffs'] house." (Dkt. 1 at 6-7). Plaintiffs claim that, prior to this incident, they were not aware that the County claimed ownership of the Property. (Dkt. 188 at 5). When Murphy asked if the officers had any kind of warrant, one officer handed Murphy a letter signed by Maggs, stating:

> As County Attorney for Chemung County, the owner of [757 Linden Place], I hereby give permission for City of Elmira employees, including members of the Elmira Police Department and the Elmira Fire Department, to enter upon the referenced premises for the purposes of preparing the property for demolition.

> If any person is found inside the premises, the County of Chemung requests that the City of Elmira proceed with criminal charges against any such persons for Trespass, or any other appropriate charge.

(Dkt. 1 at 7, 40). Plaintiffs allege they were held at the Elmira Police Station for an hour and a half, then handed appearance tickets for trespass and released without bail. (*Id.* at 8). Upon returning to the Property, Plaintiffs were initially not permitted to reenter the premises, but were eventually allowed to go inside to retrieve some personal belongings. (*Id.* at 9, 12-13).

According to Defendants, Murphy and the County entered into an agreement by which Plaintiffs were allowed to enter the Property during daylight hours from October 26, 2015 to dusk on November 2, 2014, to retrieve their personal belongings. (Dkt. 188 at 6). However, Plaintiffs deny this (*id.*) and appear to suggest that they did not enter the agreement voluntarily (*see, e.g.*, Dkt. 219-2 at 7).

## PROCEDURAL BACKGROUND

This case was previously referred to Magistrate Judge Marian W. Payson for all non-dispositive pre-trial matters. (Dkt. 13). On January 7, 2025, the referral order

in this case was transferred to the undersigned. (Dkt. 202). The procedural background in this case is extensive and only discussed in relevant part. Familiarity with the matter's procedural background is otherwise assumed for purposes of this Decision and Order.

The present motions involve two ongoing disputes in this case. First, Defendants' motion to quash relates to an ongoing dispute over discovery documents that Defendants have previously objected to producing on the grounds they are not within their possession, custody, or control.[1] (*See* Dkt. 155 at 14; Dkt. 196 at 9). Second, Martino's motion for sanctions and Plaintiffs' motion for reconsideration both relate to an ongoing dispute over Camilli's continued deposition.

## I.    <u>Non-Party Subpoenas</u>

Defendants' motion to quash concerns nine subpoenas duces tecum served by Plaintiffs on various non-party City and County officials. (*See* Dkt. 219). Plaintiffs had previously moved to compel Defendants to produce similar categories of documents. (*See* Dkt. 105). Defendants opposed the motion, in part, on the grounds that they did not have access to the documents. (*See* Dkt. 155 at 14). For any documents that Defendants did not have the practical ability to obtain, the Court, in a March 1, 2024 Decision and Order, directed them to submit a sworn declaration to that effect. (*Id.*). The Court further advised Plaintiffs that "[t]o the extent . . . Defendants persist in such objections, plaintiffs may seek to obtain the documents

---

[1]    Neither Maggs nor Martino currently work in the position or in the office they occupied when the claims in this case arose. (Dkt. 196 at 9).

through a subpoena directed to the City of Elmira or the County of Chemung." (*Id.* n.11).

Plaintiffs subsequently moved for discovery sanctions in connection with these documents. (*See* Dkt. 174; Dkt. 178). In a December 6, 2024 Decision and Order, the Court denied Plaintiffs' motion for discovery sanctions, finding there was nothing in the record to suggest that Defendants had withheld responsive documents in their possession, custody, or control. (Dkt. 196 at 9). The Court further noted that there was no evidence that the documents sought by Plaintiffs, to the extent they once existed, were not still maintained by the City and County. (*Id.*). The Court reiterated its earlier instruction that Plaintiffs could seek to obtain the documents through a subpoena directed to the City or County and noted that "Plaintiffs have apparently taken no steps to date to subpoena any documents from either governmental entity." (*Id.*). Lastly, the Court granted "one *final* sixty-day extension" until February 4, 2025 for the completion of fact discovery.[2] (*Id.* at 10) (emphasis added).

On January 23, 2025, the Clerk of Court's Office, at Plaintiffs' request, issued Murphy blank subpoenas. (Remark dated January 23, 2025). Defendants state that on February 3, 2025, Plaintiffs emailed defense counsel copies of the nine subpoenas addressed to City and County officials. (Dkt. 219-1 at ¶ 18). Although Plaintiffs did not file proofs of service for the subpoenas (*Id.* at ¶ 19; Dkt. 222 at 5), Defendants state that the subpoenas were served on February 4, 2025. (Dkt. 219-3 at 12).

---

[2]     The original fact discovery deadline in this case was June 4, 2021. (Dkt. 53 at 2). The Court has granted numerous requests to extend this deadline over the course of this litigation.

Defendants argue that these subpoenas are untimely because they called for compliance by February 21, 2025, three weeks after the February 4, 2025 deadline for the completion of fact discovery. (Dkt. 219-3 at 11-12). Defendants also argue that the subpoenas are overly burdensome because they seek documents that are either not relevant to the remaining claims or time period at issue in this case, or are already in Plaintiffs' possession. (*Id.* at 12-13). Plaintiffs argue that the subpoenas were timely served on the final day of fact discovery.[3] (Dkt. 222-1 at 3). Plaintiffs further argue that the documents sought by the subpoenas are relevant, that Defendants lack standing to object to the subpoenas, and that Defendants have failed to show the subpoenas are unduly burdensome. (*See id.* at 1-5; Dkt. 222 at 5-13).

## II.    <u>Camilli's Deposition</u>

Plaintiffs' depositions were first noticed on July 15, 2021, and were originally scheduled for August 24, 2021, nearly four years ago. (Dkt. 85 at 2). Plaintiffs objected to the deposition notices and the depositions did not take place as scheduled. (*Id.* at 3). As early as September 9, 2021, the Court ordered Plaintiffs to appear for depositions at a specified date and time and warned Plaintiffs that their failure to appear for their depositions may result in the imposition of sanctions. (Dkt. 67 at 1-2). And as early as October 17, 2022, the Court noted that "the scheduling of plaintiffs' depositions has been the subject of several motions and has required repeated judicial intervention." (Dkt. 92 at 2).

---

[3]    Plaintiffs state elsewhere that the subpoenas were served on February 2, 2025 (*see* Dkt. 222 at 5), but the Court presumes that this was in error and the actual date of service was February 4th.

Camilli ultimately appeared for a deposition by telephone on November 1, 2022. (*See* Dkt. 104-3 at 1). However, Martino thereafter filed a motion to compel a continued deposition of Camilli, claiming that Camilli's behavior was obstructive and that she repeatedly refused to answer defense counsel's questions. (*See* Dkt. 104-1 at ¶¶ 19-23). The Court granted Martino's motion to compel, finding that while he exaggerated the extent of Camilli's obstruction, a continued deposition was justified.[4] (Dkt. 155 at 7-8). Specifically, the Court permitted Martino to obtain answers to four questions to which Camilli had failed to provide a responsive answer, to ask reasonably related follow-up questions, and to inquire about the answers that Camilli had changed or retracted in a lengthy errata sheet submitted after the deposition. (*Id.* at 8-9; *see* Dkt. 119-8). The Court ordered the parties to confer and agree on a date, time, and place for the continued deposition. (Dkt. 155 at 9). The Court, however, denied Martino's request for reimbursement of costs associated with Camilli's continued deposition, with leave to renew should Camilli fail to appear for the continued deposition or unreasonably refuse to answer questions. (*Id.*).

On April 29, 2024, Martino filed a letter stating that Camilli's continued deposition was scheduled for May 17, 2024 via telephone. (Dkt. 169). The afternoon before the scheduled deposition, Camilli filed a letter seeking an extension, stating that her internet service had been turned off, and that her internet carrier provided her telephone service as well. (*See* Dkt. 170). That same day, Martino filed a letter

---

[4]    The Court also noted that Camilli "consistently stated throughout her deposition that she would not appear for a second deposition." (Dkt. 155 at 7).

opposing the request for an extension and offering to hold the deposition in person at a law office in Painted Post, which was halfway between Martino's lawyers' office and Plaintiffs' home. (Dkt. 171). Camilli did not respond to Martino's letter and the Court did not issue any order relieving Camilli of her obligation to appear for the scheduled May 17, 2024 deposition. (Dkt. 196 at 11-12). The following morning, Martino's counsel appeared with a court reporter for the deposition, but Camilli did not appear. (*Id.* at 12).

On June 10, 2024, Martino filed a renewed motion for sanctions based on Camilli's failure to appear for the May 17, 2024 deposition, requesting reimbursement of costs and "to preclude Plaintiff Camilli from offering 'favorable testimony' in support of future motions or at trial." (Dkt. 181). The Court granted Martino's request for reimbursement of costs, ordering Camilli to reimburse defense counsel for the costs of the court reporter by no later than March 3, 2025.[5] (Dkt. 196 at 12-13). The Court, however, denied Martino's request for an order of preclusion, instead "afford[ing] Ms. Camilli one last opportunity to avoid such sanction" by ordering her to appear for a rescheduled deposition at the United States Courthouse in Rochester on January 17, 2025, at 11:00 a.m. (*Id.* at 13). The Court further ordered counsel for Martino to appear with a court reporter at that time. (*Id.*). The Court

---

[5]    Martino represents that as of March 4, 2025, Camilli has "failed to comply with the sanction order to pay costs." (Dkt. 221 at 9). Plaintiffs, however, state that "Camilli did not pay the court reporter costs associated with the May 17, 2024 deposition . . . because she was never advised of the alleged amount of those costs." (Dkt. 225 at 26). Nothing in the record reflects that Martino served Plaintiffs with an invoice or otherwise formally apprised them of the costs of the court reporter.

emphasized that if Camilli failed to appear, "**Martino may renew his motion, and preclusion sanctions are likely to be imposed at that time**." (*Id.*) (emphasis in original).

On January 15, 2025, Plaintiffs filed a letter requesting to cancel the January 17th Deposition. (Dkt. 203). Plaintiffs stated that the family friend who they had arranged to transport them to Rochester on January 17th advised them on January 14th that she was no longer able to do so because of family commitments, and that the Maggs Law Office, which had been representing Martino in this action, was no longer in existence. (*Id.*). The Court then issued a Text Order on January 15, 2025 directing counsel for Martino to file a letter by the close of business that day advising the Court whether they had made arrangements to appear with a court reporter for Camilli's deposition. (Dkt. 204). Maggs's counsel, Barclay Damon, filed a letter confirming that Maggs Law Office recently ceased operations, and stating that Barclay Damon would be substituted as counsel for Martino by midday on January 16, 2025. (Dkt. 205). Barclay Damon further confirmed that it had engaged a court reporter to appear at the United States Courthouse in Rochester on January 17, 2025, at 11:00 a.m., and was prepared to proceed with Camilli's deposition as scheduled. (*Id.*).

On January 16, 2025, the Court denied Plaintiffs' letter request to cancel the January 17th Deposition, which the Court construed as a motion for reconsideration of Judge Payson's December 6, 2024 Decision and Order (Dkt. 196) requiring Camilli to appear in Rochester for the January 17th Deposition. (Dkt. 206 at 2). The Court

ordered that Camilli's deposition remained scheduled for January 17, 2025, at 11:00 a.m., at the United States Courthouse in Rochester. (*Id.* at 4). The Court also emphasized, again, that if Camilli failed to appear as ordered, "**Martino may renew his motion for sanctions, including preclusion, as explained in Judge Payson's December 6, 2024 Decision and Order**." (*Id.*) (emphasis in original).

On the morning of January 17, 2025, counsel for Martino and a court reporter retained by counsel appeared for Camilli's scheduled deposition; Camilli did not appear. (Dkt. 212). On February 17, 2025, Martino filed a renewed motion for sanctions, requesting reimbursement of the costs for the court reporter for the January 17th Deposition as well as preclusion sanctions.[6] (Dkt. 217). Plaintiffs oppose Martino's motion for sanctions, arguing that Camilli's failure to appear for her deposition was substantially justified and that the imposition of sanctions would be unjust.[7] (*See* Dkt. 225).

---

[6]     As Exhibit A to their motion for sanctions, Martino filed a transcript produced by their retained court reporter of the January 17, 2025 proceeding at which Camilli failed to appear. (*See* Dkt. 217-2). The Court notes that this is not an official Court transcript, and the Court did not review or rely on this transcript in resolving these motions.

[7]     Plaintiffs have been cautioned on multiple occasions that, pursuant to Local Rule of Civil Procedure 7(a)(3), a declaration must not contain legal arguments. (*See, e.g.*, Dkt. 85 at 8 n.3; Dkt. 196 at 2). The Court has also previously struck papers filed by Plaintiff that were both violative of this rule and a blatant attempt to circumvent page limits. (*See* Dkt. 155 at 11-12; Dkt. 196 at 2). Here, Plaintiffs' declaration is 37 pages and replete with legal arguments. (*See* Dkt. 225). By contrast, Plaintiffs' memorandum of law is only five pages and "consists largely of legal citations and quotations without discussing the application of that law to the facts . . . at issue in this case." (Dkt. 196 at 2; *see* Dkt. 225-1). Plaintiffs have previously been advised that, in addition to being procedurally deficient, this is not an effective way to present their arguments to the Court. (*See* Dkt. 196 at 2). If this were not a motion for the

On April 13, 2025, Plaintiffs filed a motion for reconsideration of the Court's January 16, 2025 Decision and Order (Dkt. 206) denying their request to cancel the January 17th Deposition. (Dkt. 226). Plaintiffs argue that the January 15th letter requesting to cancel Camilli's deposition should have been construed as a motion for a protective order, rather than a motion for reconsideration. (Dkt. 226-1 at 3). Defendants oppose Plaintiffs' motion for reconsideration. (*See* Dkt. 228). Plaintiffs requested an extension until May 15, 2025 to file their reply, but did not file it until May 16, 2025. (Dkt. 230; Dkt. 231).

## DISCUSSION

### I.    Defendants' Motion to Quash

Defendants seek to quash in their entirety Plaintiffs' nine non-party subpoenas on the grounds that they are untimely and overly burdensome. (Dkt. 219-3 at 11-13). "Federal Rule of Civil Procedure 45 allows a party to serve a subpoena for production of documents on a non-party." *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 296 (E.D.N.Y. 2024). "Subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1)." *Id.* "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that," among other things, "fails to allow a reasonable time to comply" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3).

---

particularly harsh sanction of preclusion, the Court would exercise its discretion to strike Plaintiffs' declaration.

"[T]he federal rules give district courts broad discretion to manage the manner in which discovery proceeds." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). "It is not an abuse of discretion to deny a request to reopen discovery when the requesting party previously asked for discovery extensions, and then waited until the last day of discovery to serve its requests." *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001)

### A. Plaintiffs' Subpoenas are Untimely

As to timeliness, Defendants' argument that the subpoenas are untimely is based on the fact that compliance with the subpoenas was due after the close of discovery. (*See* Dkt. 219-3 at 11-12). Plaintiffs acknowledge that the subpoenas were "served on the final day of fact discovery—February 4, 2025." (Dkt. 222-1 at 3).

Courts have found that discovery demands served before the discovery deadline but which can only be responded to after the deadline are "*per se* late[] and unenforceable." *Bhatt v. Lalit Patel Physician P.C.*, No. 18-CV-2063-DLI-SJB, 2023 WL 2895935, at *1 (E.D.N.Y. Apr. 11, 2023); *see also Adstra, LLC v. Kinesso, LLC*, No. 24-CV-2639 (LJL), 2024 WL 4753561, at *2 (S.D.N.Y. Nov. 12, 2024) (finding document requests served nine days before the close of fact discovery untimely), *reconsideration denied*, 2025 WL 552050 (S.D.N.Y. Feb. 19, 2025); *Wood v. Mut. Redevelopment Houses, Inc.*, No. 14CV7535 (AT) (DF), 2019 WL 6174369, at *9 (S.D.N.Y. Nov. 19, 2019) (finding subpoenas issued shortly before the close of discovery with return dates after the deadline untimely), *objections overruled,* 2020 WL 4548079 (S.D.N.Y. Aug. 5, 2020); *Joye v. Psch, Inc.*, No. 14-CIV-3809-AT-HBP,

2016 WL 3141659, at *4 n.2 (S.D.N.Y. June 3, 2016) (noting that "a discovery deadline is the date on which discovery should be complete; it is not the last date on which a party can serve discovery requests" and collecting cases) (quotation omitted); *Gavenda v. Orleans Cnty.*, 182 F.R.D. 17, 20 (W.D.N.Y. 1997) ("Generally, discovery requests are to be made sufficiently inside the discovery period to allow for a response prior to the discovery cut-off date. . . . Allowing document demands to be served at the very end of the discovery period would impermissibly extend the discovery period[.]").

Here, the Court agrees with Defendants that the subpoenas are untimely.[8] Because they were served on the last day of discovery, the City and County officials to whom the subpoenas were issued could not possibly comply within the deadline for discovery.[9] *See Oliver v. New York State Police*, No. 1:15-CV-0444 BKS DJS, 2018 WL 11475084, at *2 (N.D.N.Y. Dec. 17, 2018) ("Rule 45 anticipates that subpoenas will be issued with sufficient time for a response to be received within the discovery

---

[8]    The issue of whether service of a subpoena is timely under the scheduling order is separate and distinct from the issue of standing. *Ferrer v. Racette*, No. 9:14-CV-1370, 2017 WL 1750377, at *2 (N.D.N.Y. May 4, 2017). "[T]he fact that the timing of the service of the subpoena violates the scheduling deadlines set by the Court forms an independent basis to grant the request to quash." *Id.*

[9]    The two cases that Plaintiffs rely on for the issue of timeliness are consistent with the Court's conclusion that the subpoenas are untimely. (*See* Dkt. 222-1) (citing *Nikonov v. Flirt NY, Inc.*, 338 F.R.D. 444 (S.D.N.Y. 2021) and *Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562 (W.D.N.C. 2002)). Those cases merely stand for the proposition that Rule 45 subpoenas generally constitute discovery. *See Nikonov*, 338 F.R.D. at 445; *Mortg. Info. Servs.*, 210 F.R.D. at 566. But because Rule 45 subpoenas constitute discovery, they "are subject to the same time constraints that apply to all of the other methods of formal discovery." *Pasternak v. Dow Kim*, No. 10 CIV. 5045 LTS JLC, 2013 WL 1729564, at *1 (S.D.N.Y. Apr. 22, 2013); *see also Mortg. Info. Servs.*, 210 F.R.D. at 566 (concluding same).

deadline."). In addition, the Court put Plaintiffs on notice—to the extent any notice

was necessary—as early as March 1, 2024 that they may have to subpoena documents

from the City and County. (*See* Dkt. 155 at 14 n.11). Plaintiffs nevertheless continued

to pursue these documents solely from the named defendants, despite the named

defendants' representations that they lacked possession of documents and the

practical ability to obtain them, and with no evidence that the City and County no

longer maintained the documents. (*See* Dkt. 196 at 9). In its December 6, 2024

Decision and Order, the Court again noted that "Plaintiffs have apparently taken no

steps to date to subpoena any documents from either governmental entity." (*Id.*).

With this context in mind, the Court finds Plaintiffs' decision to wait until February

4, 2025—the date on which discovery closed—to serve the subpoenas inexcusable. *See*

*Colon v. City of N.Y.*, No. 12-CV-9205 JMF, 2014 WL 4100607, at *3 (S.D.N.Y. Aug.

20, 2014) (denying plaintiff's request to compel production filed the day before the

close of discovery where the Court had already granted several extensions and

plaintiff unreasonably waited until "the proverbial eleventh hour" to make his

request).

**B.    Plaintiffs Have Not Shown Good Cause to Extend Discovery**

Because Plaintiffs' subpoenas are untimely, the Court must consider whether

there is good cause to extend the discovery deadline. *See Cardew v. New York State*

*Dep't of Corr. & Cmty. Supervision*, 743 F. Supp. 3d 523, 527 (W.D.N.Y. 2024). "In

evaluating whether a party has shown good cause for its bid to enforce a late-served

subpoena, the primary consideration is whether the moving party can demonstrate

diligence." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318-GBD-BCM, 2018 WL 6712769, at *6 (S.D.N.Y. Nov. 30, 2018) (quotation omitted). "A party seeking discovery meets this standard by demonstrating that it could not reasonably meet its deadline despite diligent efforts." *Id.* (quotation omitted).

Plaintiffs cannot demonstrate diligence as to these subpoenas. As discussed above, the Court put Plaintiffs on notice as early as March 1, 2024 that they may have to subpoena documents from the City and County. (*See* Dkt. 155 at 14 n.11). More generally, this case has been pending for nearly seven years. None of the documents sought by the subpoenas concern information that was unavailable or unknown until recently. On the contrary, the documents all relate to long-established claims and defenses (including many claims that have been dismissed). Plaintiffs offer no justification for serving these subpoenas on the last day of discovery. Plaintiffs plainly could have served these subpoenas within the deadline.

For these reasons, Defendants' motion to quash (Dkt. 219) is granted.

## II. <u>Defendants' Motion for Sanctions</u>

Martino requests an order (1) to preclude Camilli from offering "favorable testimony" in support of future motions or at trial and (2) to reimburse Martino for costs associated with retaining a court reporter for the January 17th Deposition. (Dkt. 217). Rule 37(d) provides that the Court may, on motion, order sanctions if a party fails, after being served with proper notice, to appear for that person's deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Sanctions may include "prohibiting the disobedient

party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." Fed. R. Civ. P 37(d)(3), (b)(2)(A)(ii). "Instead of or in addition to these sanctions, the court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Before ordering a sanction of preclusion, the Court "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988). "In considering whether to impose sanctions pursuant to Rule 37(d), courts consider: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" *Moore v. Peters*, No. 6:13-CV-06271 EAW, 2021 WL 248011, at *3 (W.D.N.Y. Jan. 26, 2021) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). "However, 'these factors are not exclusive, and they need not each be resolved against the party' opposing sanctions." *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 52 (S.D.N.Y. 2014) (quoting *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). "Sanctions must be weighed in light of the full record in the case." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979). Although preclusion of evidence is a harsh remedy and should only be imposed in rare situations, it is "necessary to achieve the

purpose of Rule 37 as a credible deterrent rather than a paper tiger." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (quotation omitted).

Here, the Court finds that Rule 37 sanctions, including preclusion sanctions, are warranted. As to willfulness, Camilli claims that her failure to attend the January 17th deposition was due to her inability to arrange a ride to Rochester, and that such circumstances were "beyond her control." (*See* Dkt. 225 at 6-7). However, Camilli was aware by January 14th that the friend she had arranged to drive her to Rochester would be unable to do so. (*See* Dkt. 203 at 1). Moreover, Camilli's explanation must be viewed in light of the full record in this case. Plaintiffs have resisted Defendants' efforts to depose them in one form or another for almost four years. When Camilli was finally deposed—which itself required judicial intervention—she expressly stated that she would not accommodate a second deposition. When Camilli was first ordered to appear for a continued deposition on May 17, 2024, she failed to appear, making a last-minute excuse that the Court found insufficient, and subsequently accused defense counsel of lying about making accommodations for an in-person deposition. (*See* Dkt. 225 at 18-19). Her failure to appear on January 17, 2025 generally followed the same pattern of making a last-minute excuse, and then blaming opposing counsel for appearing at all, despite being ordered to appear by the Court. Against this demonstrable pattern of noncompliance over a period of several years, the Court can only give marginal weight to Camilli's claim that her failure to attend the January 17th Deposition was beyond her control and not willful. *See Walsh v. Agave Elmwood Inc.*, No. 1:17-CV-00605 EAW, 2021 WL 4244315, at *3 (W.D.N.Y.

Aug. 24, 2021) ("Munico's . . . failure to appear for a deposition over the course of a
several year period, despite repeated efforts by Plaintiff to schedule it, demonstrates
willful noncompliance.").

As to the efficacy of lesser sanctions, after Camilli failed to appear for her May
17, 2024 deposition, the Court imposed the lesser sanction of ordering Camilli to
reimburse Defendants for the costs of their court reporter. That sanction did not
prevent Camilli from failing to appear again. Plaintiffs' opposition papers also
emphasize that Camilli is an *in forma pauperis* litigant and "has no income from any
source and has had no income from any source for at least the last fifteen (15) years."
(*See* Dkt. 225 at 6). Accordingly, Camilli has demonstrated that monetary sanctions
alone are an insufficient deterrent. *See Middleton v. United States*, No. CV 10-6057
JFB ETB, 2011 WL 7164452, at *6 (E.D.N.Y. June 28, 2011) ("Moreover, plaintiff is
proceeding *in forma pauperis*, so a monetary sanction would be unavailing"), *adopted*,
2012 WL 394559 (E.D.N.Y. Feb. 7, 2012).

The duration of Camilli's noncompliance also counsels in favor of preclusion
sanctions. "There is no absolute measure by which to determine whether the delay is
significant. Rather, the determination is case-specific: significant delay can range
from weeks to years depending upon the circumstances." *Moore*, 2021 WL 248011, at
*4 (quotation omitted). The dispute over Camilli's rescheduled deposition alone has
spanned well over a year, dating back to the Court's March 1, 2024 Decision and
Order, in which Camilli was first ordered to appear for a continued deposition. (*See*
Dkt. 155). Camilli and Murphy's general resistance to their depositions goes back

further, necessitating judicial intervention as early as September 2021. (*See* Dkt. 67). At this point, almost ten years have passed since the underlying events of this case and almost three years have passed since Martino first deposed Camilli. Her prolongation of her continued deposition has potentially compromised its value as discovery, as the continued deposition would now involve recalling specific details from nearly ten years ago.

Lastly, the Court has warned Camilli several times of the consequences of noncompliance. With respect to preclusion specifically, in its December 6, 2024 Decision and Order, the Court warned Camilli that if she failed to appear as ordered for the January 17th Deposition in Rochester, then "**preclusion sanctions are likely to be imposed at that time**." (Dkt. 196 at 13) (emphasis in original). Subsequently, in its January 16, 2025 Decision and Order denying Plaintiffs' request to cancel the January 17th Deposition, the Court again warned Camilli that if she failed to appear as ordered, "**Martino may renew his motion for sanctions, including preclusion, as explained in Judge Payson's December 6, 2024 Decision and Order**." (Dkt. 206 at 4) (emphasis in original).

Plaintiffs argue that sanctions are unwarranted because Camilli's failure to appear was substantially justified. (Dkt. 225 at 3-7). "Under Rule 37, conduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) (quotation and alteration omitted). The Court does not find that Camilli's failure to appear for the January

17th Deposition was substantially justified. The Court's January 16th Decision and Order already considered the circumstances of Camilli's transportation to Rochester, unambiguously denied her request to cancel the deposition on that basis, and clearly stated that the deposition remained scheduled for January 17th at 11:00 a.m. in Rochester. (Dkt. 206 at 4). Upon the issuance of that decision, there could be no genuine dispute, nor could reasonable people differ, as to the appropriateness of not appearing for the January 17th Deposition. Disagreeing with the Court's orders is not a valid basis for failing to comply with them.

Plaintiffs further argue that the imposition of sanctions would be unjust because Camilli filed a letter on the morning of January 17th stating that she would not appear in Rochester that day for the continued deposition. (Dkt. 225 at 7-9; *see* Dkt. 211). Plaintiffs claim that upon receipt of this letter, Martino's counsel should have "cancel[ed] the scheduled deposition, so as to avoid incurring unnecessary costs and expense." (Dkt. 225 at 8). However, Martino's counsel was merely complying with the Court's December 6, 2024 directive, ordering "[c]ounsel for Martino . . . to appear with a court reporter" on January 17th at 11:00 a.m. at the United States Courthouse in Rochester (*see* Dkt. 196 at 13), as well as the Court's January 16, 2025 Decision and Order confirming that the deposition remained scheduled for that date and time (*see* Dkt. 206 at 4). Because the Court did not issue any order or other communication addressing Camilli's January 17th letter, Martino's counsel had no reason not to comply with the Court's directive to appear at 11:00 a.m. with a court reporter for the scheduled deposition.

Accordingly, the Court finds that the following sanctions are warranted. First, Camilli must reimburse Martino for the costs his attorneys incurred in retaining a court reporter for the January 17th Deposition within 90 days of Defendants serving and filing a copy of the invoice.[10] *See John Wiley & Sons*, 298 F.R.D. at 149. **Camilli is warned that her failure to pay these costs as ordered will result in the imposition of additional sanctions, including potentially the dismissal of this case.**

Second, Camilli will be precluded from offering favorable testimony at trial and in support of future motions as to any of the questions that she failed to provide a responsive answer to, as well as any of the questions for which she substantively changed or retracted her answer in her subsequent errata sheet.[11] These questions include:

> (1) Whether Camilli went inside the real property tax office on September 2, 2015, after being released from the police station;
>
> (2) What the ramrod used by the police on the morning of September 2, 2015 looked like;
>
> (3) Which County officials Camilli spoke with about getting additional time to remove items from the Property;

---

[10]    Despite Plaintiffs' representations regarding Camilli's lack of income, it would be unjust not to require her to reimburse Martino, as his counsel appeared for the January 17th Deposition with a court reporter pursuant to the Court's orders. Moreover, *in forma pauperis* status does not relieve a litigant of the obligations of taking part in discovery. *See Koehl v. Greene*, No. 9:06CV0478 LEK/GHL, 2007 WL 4299992, at *3 (N.D.N.Y. Dec. 6, 2007).

[11]    With respect to future motions, Camilli may not include favorable testimony as to any of these questions in an affidavit, declaration, or affirmation, nor many Plaintiffs' motion papers rely on such testimony.

(4) The estimated value of belongings left inside the Property;

(5) Whether the Property was ever placarded as uninhabitable; and

(6) Whether City of Elmira code enforcement officers were present at the Property on the morning of September 2, 2015, prior to Plaintiffs' being transported to the police station.

(Dkt. 104-3 at 19-20, 21-26, 59, 60-69, 90-91, 97-98; Dkt. 119-8 at 3-5, 6).[12]

## III.   <u>Plaintiffs' Motion for Reconsideration</u>

The Court turns finally to Plaintiffs' motion for reconsideration of the Court's January 16, 2025 Decision and Order (Dkt. 206) denying Plaintiffs' request to cancel the January 17th Deposition. (Dkt. 226). As an initial matter, the Court notes that Plaintiffs requested to extend the deadline to file a reply as to this motion until May 15, 2025. (*See* Dkt. 229). The Court granted Plaintiffs' request but stated that "<u>[r]eplies filed after this deadline will not be taken under consideration by the Court in resolving the motion</u>." (Dkt. 230) (emphasis in original). The Court included this warning because Plaintiffs have frequently requested extensions for submissions throughout this litigation only to file their papers after the new deadlines *that they themselves requested*. In this instance, Plaintiffs filed their reply one day after the May 15th deadline. (*See* Dkt. 231). Accordingly, the Court has not taken the reply under consideration in resolving this motion.

---

[12]    The Court notes that precluding Camilli from offering favorable testimony as to these questions is not unduly harsh, since Murphy was also present for these events and could presumably testify as to this information. (*See* Dkt. 225 at 24) (Plaintiffs stating that "Murphy has access to all the same facts and information as Camilli and, indeed, substantially more facts and more relevant information.").

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (quotations omitted). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015) (quotation omitted). "[A] party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 131 (S.D.N.Y. 2000) (quotation omitted).

Plaintiffs argue that their January 15th letter requesting to cancel Camilli's January 17th Deposition should have been "properly construed as a motion for a protective order pursuant to Rule 26(c)(1)(B), not a motion for reconsideration of Judge Payson's December 6, 2024 Order." (Dkt. 226-1 at 3). However, Plaintiffs have not demonstrated that the Court committed an error—let alone a clear error—on this point. Plaintiffs claim that their January 15th letter "was clearly a motion for a

protective order" based on "its explicit wording and request for relief." (*Id.* at 4). But Plaintiffs have previously moved for a protective order in this case. (*See* Dkt. 71). In fact, that motion was filed under similar circumstances—Plaintiffs were seeking to cancel their first Court-ordered depositions in 2021. (*See* Dkt. 67). In so moving, Plaintiffs acknowledged that the relief they were seeking could be construed as either a motion for reconsideration or a motion for a protective order. (*See* Dkt. 71 at 7) ("Upon further research and thought, we decided to make a motion with two prongs for relief – namely, reconsideration under Fed. R. Civ. P. 54(b) and/or for a protective order pursuant to Fed. R. Civ. P. 26(c)(1)."). The Court disagrees that Plaintiffs' January 15th letter "was clearly a motion for a protective order," as Plaintiffs have previously shown the capacity to file a motion that clearly seeks a protective order. Their January 15th letter did not do so, and did not include the words "protective order" in any form. Instead, Plaintiffs' January 15th letter set forth the reasons why they disagreed with Judge Payson's December 6th Decision and Order requiring Camilli to appear at the Rochester courthouse for a continued deposition.

Furthermore, Plaintiffs' assertion that their January 15th Letter should not have been construed as a motion for reconsideration is belied by the fact that they continue to devote a substantial portion of the instant motion for reconsideration to objections to Judge Payson's December 6th Decision and Order. (*See* Dkt. 226-1 at 7-15). At the very least, Plaintiffs implicitly acknowledge that construing their January 15th letter as a motion for reconsideration was not clearly erroneous, because they expressly argue that it could have and should have been granted as such. (*See id.* at

12-13) ("Assuming, for the sake of discussion or argument, without conceding, that our January 15th motion was, in fact, not a motion for a protective order . . . but rather a motion for reconsideration . . . we respectfully submit that our motion should justly and properly have been granted for the reason already mentioned[.]").

Lastly, even if the Court *had* construed Plaintiffs' January 15th letter as a motion for a protective order, the Court would not have granted it. "Courts retain substantial discretion to determine the site of a deposition." *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 323 F.R.D. 177, 178 (S.D.N.Y. 2017) (quotation and alteration omitted). It is not uncommon for a court to order that a deposition be held at the courthouse where it sits under circumstances, such as here, where court intervention may be necessary to effectively conduct the deposition, or where the deponent has previously failed to appear. *See, e.g.*, *Adams v. Co-op City Dep't of Pub. Safety*, No. 21-CV-2675-DEH-BCM, 2024 WL 1478897, at *11 (S.D.N.Y. Apr. 5, 2024); *Palmer v. Penfield Cent. Sch. Dist.*, No. 10-CV-6267L, 2015 WL 1038120, at *4 (W.D.N.Y. Mar. 10, 2015*)*; *Hynes as Tr. of Calling Card Distribution Tr. v. Giambalvo*, No. 09 CV 2599 (ARR)(LB), 2010 WL 11626956, at *1 (E.D.N.Y. Aug. 13, 2010). Plaintiffs' January 15th letter acknowledged that traveling to the scheduled deposition by bus was feasible. Given the prolonged nature of Camilli's noncompliance, any burden or expense associated with traveling by bus could not be considered undue. *See In re PE Corp. Sec. Litig.*, 221 F.R.D. 20, 26 (D. Conn. 2003) ("A burden or expense is not 'undue' simply because it is burdensome or expensive.").

In sum, Plaintiffs' motion appears to be a vehicle for relitigating, under the guise of a new theory, the same issues that the Court fully considered in its prior decisions. That is not a proper basis to grant a motion for reconsideration. Plaintiffs' motion for reconsideration (Dkt. 226) is therefore denied.

<u>CONCLUSION</u>

For the foregoing reasons, Martino's motion for sanctions is (Dkt. 217) granted. Camilli shall reimburse Martino for the costs incurred in arranging for a court reporter for the January 17th Deposition within 90 days of Defendants serving and filing a copy of the invoice. Camilli will also be precluded from offering favorable testimony at trial and in support of future motions as to the questions identified herein. Defendants' motion to quash Plaintiffs' nine non-party subpoenas in their entirety (Dkt. 219) is granted. Plaintiffs' motion for reconsideration of the Court's January 16, 2025 Decision and Order (Dkt. 226) is denied.

**SO ORDERED.**

_____
COLLEEN D. HOLLAND
Unites States Magistrate Judge

DATED: July 10, 2025
        Rochester, NY

- 26 -